## JOHN MORIARTY *v.* THE STATE.

1. CRIMINAL PRACTICE. *Instructions for the State.*
   The practice of giving few and simple instructions for the State in criminal cases is commendable.

2. SAME. *In supreme court. Competency of juror.*
   An appellant convicted of a criminal charge has no right to complain in this court of the action of the court below in declaring competent a juror whom he peremptorily challenged and got rid of, where it appears that he was given and used one more peremptory challenge than the law allowed him.

3. SAME. *Homicide. Evidence of dangerous character of deceased.*
   Where, in the trial of one accused of murder, it is admissible to prove the dangerous character of the deceased, it can only be done by evidence of his general reputation.

4. SAME. *Murder. Evidence of threats, difficulties, etc. Overt act.*
   In the trial of an indictment for murder, evidence of antecedent threats by the deceased, or of previous difficulties between the deceased and the accused, or of the dangerous character of the deceased and his habit of going armed and being skillful in the use of deadly weapons, is inadmissible, unless it be shown that at the time of the killing something was done by the deceased which, interpreted in the light of such evidence, afforded the accused reasonable ground to apprehend a design on the part of the deceased to take his life or do him some great personal injury, and to believe that there was imminent danger of such design being accomplished.

5. SAME. *Murder. Evidence of threats, etc. Overt act. Case in judgment.*
   M. was sitting in a blacksmith's shop with a double-barreled shotgun on his lap and a pistol in his pocket, while R. and the blacksmith, P., were engaged

in angry conversation.  R. addressed no remark to M., but, according to the statement of the latter, threw his hand to his hip-pocket, when M. fired his gun at and killed R.  M., having been indicted for killing R. and being upon trial, testified to the circumstances of the homicide, and then proposed to prove threats made by the deceased against him, previous difficulties between them, the dangerous character of the deceased, and his habit of going armed and being skillful in the use of arms; but the evidence was excluded by the court on the ground that no overt act of the deceased toward the defendant at the time of the shooting had been proven.  *Held,* that such evidence was properly excluded, for if there was any overt act it was directed to P. and not to M.

APPEAL from the Circuit Court of Yazoo County.

HON. T. J. WHARTON, Judge.

On the 30th of May, 1883, John Moriarty was indicted upon the charge of having murdered J. W. Ricketts on the 9th of April, 1883.

In impaneling the jury, John W. Powell, who was examined as to his competency, stated that he had formed an opinion, from talking with some of the witnesses, as to the charge against the defendant, but that he could try the case impartially upon the evidence, as though he had never formed an opinion or had any impression in respect to the matter.  The court declared him competent and the defendant excepted, " whereupon he was challenged by the counsel for the accused.  The State tendered defendant one more challenge than allowed by law to him, which defendant accepted and exercised before the panel was complete."

At the trial of the case, R. B. Pepper, a witness for the State, testified in his examination-in-chief that he observed the deceased very closely during the interval between the first and second shots fired by the defendant and which produced his death.  Upon cross-examination he was asked " why he observed him so closely;" but, upon the objection of the district attorney, the court excluded from the jury the witness' answer that he did so because " believing deceased was a dangerous man, and believing that he always went armed."  To the exclusion of this testimony the defendant excepted.

The evidence developed these facts attending the killing: On the

9th day of April, 1883, Moriarty was sitting in R. B. Pepper's blacksmith shop in the town of Deasonville with a double-barreled shotgun lying across his lap when Ricketts entered the shop and engaged in a conversation with Pepper, the blacksmith. The conversation between Pepper and Ricketts grew into an angry dispute on the part of the latter. Ricketts walked to the door of the shop and stood there a few seconds, when Moriarty discharged one barrel of his gun at Ricketts, who then ran out of and from the shop, and had gone about twenty-five or thirty feet when a second shot from Moriarty's gun felled him to the ground. He expired in about ten minutes. Either shot, the first or the second, would probably have been fatal. After firing the first shot, Moriarty advanced a few steps, fired the second time, and then drew a pistol, but did not attempt to use it.

Ricketts addressed no remark to Moriarty while in Pepper's shop, but Moriarty claims that just before the shooting Ricketts made a demonstration the nature of which may be judged by the following extract from his own testimony : " I was about eight feet from the front of the shop, and Ricketts was five or six feet from the west side of the shop and about eleven feet from where I was sitting, which was on the east side of the shop. Ricketts had been standing where he was some two or three minutes, and while there he aroused my fear by his manner, which was strange and agitated, and then he straightened up and hung the thumb of his right hand in his vest between the buttons and took one glance downward, but in the direction I was in. Then he began apparently to look toward the back of the shop, but, I thought, was furtively looking at me. The look on his face and his expression looked to me like that of a man hesitating as to whether he should do something or not. He stood thus a very short time and by his manner, as detailed, aroused my fear and apprehension, and then he took his pipe out of his mouth with his left hand, and almost simultaneously he quickly and suddenly threw his right hand behind him and under his coat tail to his hip-pocket, and as quickly as I could after I saw his hand go under his coat I fired, without taking time to put the gun to my shoulder."

Ricketts had no firearms or other weapon at the time he was shot.

The defendant offered evidence to prove previous threats made by the deceased against his life, previous difficulties between them, hostile acts of deceased toward defendant, attempts by deceased to assassinate him and to employ others to do so, the dangerous, violent, and vindictive character of the deceased, and the fact that he carried concealed weapons habitually and was expert in the use of them. The district attorney objected to the introduction of such testimony on the ground " that no overt act of deceased at the time he was shot was proven, or, if proven, the subsequent act of defendant in shooting the deceased the second time precluded him from the right to avail himself of the overt act of deceased just prior to the shooting." The court sustained the objection and refused to admit the testimony, and the defendant excepted.

The court gave the following instructions for the State :

" 1. The fear of Moriarty that Ricketts might on some other occasion kill him (Moriarty) would not justify or excuse the killing of Ricketts by Moriarty ; to excuse or justify the killing, Ricketts' conduct or act at the time of the killing must have been of such a character as to have reasonably made it appear to Moriarty that his own life or person was then and there in immediate danger at the hands of Ricketts.

" 2. By reasonable doubt is meant not a mere speculative doubt or vague conjecture, mere supposition or hypothesis, but such doubt as reasonably arises out of the testimony—a doubt for which a reason can be given.

" 3. No mere fear or apprehension on the part of Moriarty, however honestly entertained by him, of a design on the part of Ricketts to kill him or to do him some great personal injury will excuse or justify the killing of Ricketts by Moriarty, unless the execution of such design was then and there manifested by some act, conduct, or behavior of Ricketts, reasonably calculated to evince to a reasonable person, under the circumstances, that the danger to Moriarty was urgent and impending, and that to slay Ricketts was necessary to protect his own life or his person from injury.

" 4. If the jury believe from the evidence, beyond all reasonable doubt, that Moriarty willfully killed Ricketts on the 9th of April, 1883, by shooting him twice with a shotgun, and that on that occasion Ricketts had not spoken to Moriarty and had then been guilty of no act or conduct which was reasonably calculated to have aroused the fears or apprehensions of Moriarty for his own life or person at the hands of Ricketts, then Moriarty is guilty of murder, and the jury should so find, however much afraid they may believe Moriarty was of Ricketts, or however much reason they may believe Moriarty might have had for such fears or apprehensions on account of Ricketts' conduct previous to the time of the killing."

To the action of the court in giving the foregoing instructions the defendant excepted.

· The jury found the defendant guilty as charged, and fixed his punishment at imprisonment in the penitentiary for life. From the judgment based upon such verdict the defendant appealed to this court.

*Hudson, Hudson & Holt,* for the appellant.

1. The court erred in refusing to permit the testimony of Pepper, excluded, to go to the jury. The question was whether appellant believed, or had reason to believe, himself in danger when he fired the second shot. Pepper testified that he watched Ricketts closely while he ran until he fell, and was asked why he watched him, and upon his answering it was excluded from the jury. His answer was that he was afraid, or he expected, that Ricketts would turn and shoot Moriarty, and that might put him in danger.

Now, this was not an opinion or conjecture, but the strongest kind of legal testimony.

2. The main ground of error relied on in this case is the exclusion of the testimony as to the previous difficulties between appellant and the deceased, J. W. Ricketts, the character of Ricketts and his habit of carrying concealed weapons, and his attempts to take the life of appellant as well as his attempts to have him assassinated and his threats to kill him, on the ground that there was no proof of an overt act on the part of Ricketts at the time of the killing.

Did appellant have reasonable ground to believe that Ricketts was attempting to draw his pistol when he fired upon him? This is the question which the court must decide.

That appellant did believe so is evident, for he fired at the instant without even waiting to put his gun to his shoulder. He swears that he believed so, and his conduct corroborates that testimony. Was such a belief reasonable?

It is proved beyond all question that deceased was an expert with the pistol and that he was a violent, dangerous, and vindictive man, and for such a man it would not be strange if in the wildest spirit of bravado he should fire upon his enemy, even while he was armed. Appellant thought that he would do so, and no one knew deceased better than appellant. It is proved that deceased was in the habit of carrying concealed weapons, and a weapon, or rather pistol, in his right hip-pocket. As shown before, appellant knew this. The conduct of deceased was peculiar. He had just a few weeks previously tried to hire a man to kill appellant, and had said he would kill him before court. In view of these facts and others appearing in the record, appellant as a reasonable man must necessarily have thought that when the hand of Ricketts went to the pocket where he usually carried a pistol that it went there for the pistol, and if that fear was a reasonable one it was error for the court to exclude the testimony which was offered. *Hawthorne* v. *State*, 61 Miss. 749; *Guice* v. *State*, 60 Miss. 714; *Holly* v. *State*, 55 Miss. 424; *Kendrick* v. *State*, Ib. 448; *Spivey* v. *State*, 58 Miss. 864.

It was also said that because defendant fired the second shot that the testimony was properly rejected.

Our answer to this is that the second shot was fired before the apprehension of danger could have worn of, and at a time when it did in fact continue to exist, as appellant testifies and as Pepper shows when he swears that he watched Ricketts because he feared or expected him to shoot while running.

*R. S. Holt*, of counsel for the appellant, argued the case orally.

*T. S. Ford*, Attorney General, for the State.

1. It is unnecessary to discuss the correctness of the ruling of the

court as to the juror Powell. He was challenged peremptorily by defendant. By consent of the district attorney defendant was allowed an additional challenge, and the defendant has no cause for complaint here.

2. There was no error for the court to refuse to allow the witness Pepper to state an opinion or conjecture.

3. The instructions for the State, I submit, embody the law correctly and were applicable to the case.

4. Was the ruling of the court below correct in excluding testimony of antecedent difficulties between appellant and deceased and of antecedent threats by deceased against the life of appellant? There was no overt act proven or any demonstration on the part of the deceased directed toward the accused. The evidence shows that Ricketts was unarmed and that the act which defendant seeks to construe as an overt act was not a demonstration indicative of an intention to shoot him, but an act which, if done at all, was dictated by no purpose to kill any one. Ricketts had no pistol or other weapon in his pocket, and Moriarty when he shot him was in no danger. Did Moriarty have reasonable ground to apprehend danger? Granting that the gesture was an equivocal one, I submit that the proof shows that it was not directed at defendant. Ricketts had not addressed a word to defendant. He was in a wrangle with Pepper. If he made an equivocal gesture, which we now know meant nothing, and Pepper had shot him, it might have been the foundation upon which to introduce evidence of threats against Pepper. In this case the court below certifies in the bill of exceptions that there was no proof of an overt act. This was an adjudication of the fact upon which it was necessary for the court to pass, and it is a conclusion reached by the learned judge sitting with all the witnesses before him and under circumstances better adapted to the formation of a correct conclusion than are afforded to this court. The presumption is in favor of the correctness of such finding.

In *Newcomb* v. *The State*, 37 Miss. 399, a case is presented in many respects analogous to the one at bar.

It is submitted that the action f the court below in refusing to

admit evidence as to antecedent threats was proper, and the following authorities are cited: 37 Miss. 400; 44 Miss. 773; 47 Ala. 103; 33 Ala. 380; 37 Cal. 682.

5. That the second shot inflicted a mortal wound, that the deceased was fleeing for his life at the time, and that defendant was in no real or apparent danger at the time seems clear from the evidence and not to be controverted. In view of this testimony the proof of antecedent threats was clearly incompetent.

*T. S. Ford,* Attorney General, also made an oral argument.

ARNOLD, J., delivered the opinion of the court.

On the facts of record we find no error in the instructions given to the jury for the State, and we commend the discretion and the just conception of official duty which combined all the law necessary for the prosecution in the case in four brief and simple instructions.

If it be conceded that Powell was not a competent juror under § 3072 of the code, the appellant has no cause of complaint on this account after he accepted and enjoyed the bounty of an additional peremptory challenge tendered to him by the State.

The objection of the district attorney to the testimony of the witness Pepper on cross-examination was well taken. If the character of the deceased as a dangerous man had been material it could have been proven only by evidence of general reputation. For reasons quite as obvious the belief or conjecture of the witness that the deceased always went armed was also inadmissible.

No error was committed in excluding from the jury the testimony offered by the appellant as to antecedent threats made by the deceased, or as to previous difficulties between him and the deceased, or as to the character of the deceased and his habit of going armed and being skilled in the use of deadly weapons. Such testimony was inadmissible unless it was shown that at the time of the killing something was being done by the deceased which, interpreted by the light of such testimony, afforded the accused reasonable ground to apprehend a design on the part of the deceased to take his life or do him some great personal injury, and to believe that there was imminent danger of such design being accomplished. *Wesley* v.

---
---

*The State,* 37 Miss. 346 ; *Holly* v. *The State,* 55 Miss. 424 ; *Kendrick* v. *The State,* Ib. 436 ; *Scott* v. *The State,* 56 Miss. 287 ; *Spivey* v. *The State,* 58 Miss. 858.

The action of the appellant after he fired the first shot cannot be reconciled with any rule of law upon which such evidence is rendered admissible. At the second shot his unarmed and unresisting victim had turned and was fleeing from him and had gone twenty or twenty-five feet.

But, without reference to this consideration, was the excluded testimony competent when referred to the circumstances which attended the firing of the first shot? We think not. The deceased had uttered not a word, and had made no demonstration, hostile or otherwise, directed toward the appellant. If the deceased threw his hand to his hip-pocket, as alleged, and the act imported any significance to any one, it was to Pepper, with whom he " was engaged in somewhat angry conversation," and not to the appellant, to whom he had not spoken. The appellant was doubly armed, with a double-barrel shotgun across his lap and a pistol in his pocket or about his person, within a few feet and in full view of the deceased. His position with reference to the deceased was such as to deter him from violence, at least toward the appellant, and to enable the appellant to meet and successfully resist any movement manifested against himself. Assuming that the facts sought to be proved existed and were known, it may be confidently affirmed that a reasonable man so situated would have no just ground to believe, from what was done by the deceased, that it was necessary for him to kill in order to save his own life or to protect himself from great bodily harm.

*Affirmed.*