### ROBERT KING *v.* THE STATE.

1. CRIMINAL PRACTICE. *Homicide. Evidence. Habit of carrying concealed weapons.*

   In the trial of K., charged with the murder of C., evidence had been adduced to the effect that the deceased was a violent, vindictive and dangerous man, and that these characteristics were known to the accused; and that, in an altercation which terminated in the homicide, C. threatened to kill K., and thrust his hand into his pocket, "as if he was going to kill" the accused. Then the accused offered testimony to show that the deceased had, habitually, carried concealed weapons, and that such fact was known to the accused, and was a matter of general repute in the community in which the deceased had lived, and known so to be by the accused. The proffered testimony was rejected by the court. *Held,* that the rejection of such testimony, in the state of case indicated, was error.

2. SAME. *Homicide. Character of deceased. Evidence of particular acts.*

   In such case, it is not permissible for the accused to prove that the deceased had been engaged in frequent fights, in which he used deadly weapons, and had been seen by the witnesses in several fights, in which he made deadly assaults upon his antagonists, and that the accused knew these facts. The character of the deceased cannot be shown by proof of such particular acts of misconduct, but only by evidence of his general reputation.

3. SAME. *Declaration of accused, whether part of* res gestæ.

   After the perpetration of a homicide and the arrest of the slayer, a declaration by him as to the cause of the killing, though made but a little more than a minute after the enactment of the fatal deed, is not a part of the *res gestæ,* and is, therefore, inadmissible in evidence upon the trial of him by whom the homicide was committed.

APPEAL from the Circuit Court of Warren County.

HON. RALPH NORTH, Judge.

In July, 1888, Robert King was indicted on the charge of having, on the 12th of May, 1888, killed and murdered one Gus Cox. He was tried, convicted and sentenced to be hanged. From the judgment against him he appealed to this Court.

The evidence showed that King, Cox, and others were in a justice of the peace's court-room, the two mentioned discussing

the settlement of a law-suit between them, when the former commenced shooting the latter with a pistol. Adams, the justice of the peace, who was a witness for the state, testified that, when King had commenced to shoot, Cox ran out of the house and, " King ran out of the door behind Cox; Cox turned to the right and King to the left, towards home." The witness was then asked what King said, as to the cause of the shooting, after he had been arrested and brought back into the court-room; to which inquiry he replied : " I think Williams said, ' Oh, Bob, what made you do that ? ' And he said, ' That man threatened my life ! ' " This answer was, by the Court, excluded from the jury. The proof showed that Cox, after getting out of the court-room, had turned aside and fallen, and King, having followed Cox out of the house, was going away from him, and in the direction of his, King's, home, when he was arrested and carried back into the court-room, and then, a little more than a minute after the shooting, made the statement narrated by Adams and excluded from the evidence by the Court.

The counsel for the appellant here assign, as errors of the court below, seventeen particulars of that court's action in the conduct of the trial of the accused. But only three of the points assigned for error have been considered by this court, and they relate to the rejection of the evidence offered by the accused, as above stated, and to other evidence offered by him, the nature and purport of which, as well as the circumstances in which the same was rejected, are sufficiently stated in the opinion delivered herein.

*McCabe & Anderson*, for the appellant.

Within one minute after the killing was over, and before the defendant had time to cool or concoct a story, he was asked by a person present, why he had done the killing. His reply was : that man threatened my life—that is, tried to kill him. The appellant offered to prove this fact, but the court refused to allow him to do so. The action of the court in this regard is the subject of the appellant's third assignment of error.

The statement of the defendant as to why he killed the deceased ought to have gone to the jury. It was part of the *res gestæ*, and was admissible as such. It was certainly made

without any premeditation or artifice, and without any view to the consequences. It would have elucidated the facts with which it was connected. It was also admissible because after admission by the court of other things he said at the time. *Scaggs* v. *State*, 8 S. & M., 722.

. In addition to the fact that the deceased was a man of bad character, and had made repeated threats against the life of the defendant, defendant offered to prove and show that he, defendant, knew of his own knowledge, that deceased habitually went armed with deadly weapons, to wit : a knife and pistol; that he had had frequent fights in which he used them, and that the defendant had seen him in several fights, in which he made use of such deadly weapons and tried to kill his antagonists therewith. But the court refused to allow the proof or any part thereof to be made.

The action of the court in the particulars named constitutes the subject of our 10th and 11th assignments of error.

The court below erred in both the particulars named.

*Actus non reum facit, nisi mens sit rea.* Whether or not a man is guilty of a crime in a given case depends upon how the thing looked to him at the time. By the law of the land, as laid down in the repeated decisions of this court, a defendant on trial in a criminal case for murder, where his defence is that of a justifiable homicide, is entitled to the benefit of any quickened apprehensions which may naturally and reasonably arise out of the facts and circumstances that surrounded him at the moment of the killing ; and our juries are told, that they are not to try the defendant by the light of after-developed facts and events, nor should they hold him to the same cool and correct judgment which they are *now* able to form ; but must, as far as possible, put themselves in his place, take a view of all the surrounding facts and circumstances, and give to the defendant the benefit of any quickened apprehensions that might naturally and reasonably arise from such surrounding facts and circumstances, and judge of his guilt or innocence accordingly.

Now if the defendant is entitled to the benefit of his quickened apprehensions, aroused in the manner, indicated, and the jury are to give him the benefit of such quickened apprehensions, then we claim that he is entitled to have every fact or

circumstance that would or might, reasonably and naturally, have quickened his apprehensions, or the apprehensions of a reasonable man situated as he was, go to the jury as lights, by which to judge of his intent. In no other way can they see or know what the surrounding facts and circumstances were. In no other way can they put themselves in his place. In no other way can they give him the benefit of such quickened apprehensions. What is the use to tell the jury that they must give him the benefit of any quickened apprehensions reasonably and naturally arising out of the facts and circumstances surrounding him, and at the same time, withhold those facts and circumstances from their consideration? If miracles were still in order, we might at least hope them success; but the days of miracles, we are told, are over.

The views here announced will be found fully and elaborately outlined in the reasoning of this court in the cases of Spivey v. State, 58 Miss., pp. 864-5-6; Cotton v. State, 31 Miss., 504; and in Horrigan & Thompson, Self-Def., p. 683; 22 Ala., p. 39; 16 N. W. Rep., 743.

That the facts here offered to be proved would have quickened, or serve to quicken, the apprehensions of the defendant, or of any reasonable man situated as he was, will hardly be denied. What figure they may have cut in this killing no one knows; or to what extent they would have shielded the defendant had they gone to the jury, and been considered by them. We wager little in asserting that they would have reduced the verdict from murder to manslaughter.

H. C. McCabe, of counsel for the appellant, argued the case orally.

L. W. Magruder, on the same side.

The testimony of Adams as to King's statement one minute after the killing should have been admitted as part of the res gestæ. It is not necessary that the words should be coincident in time to the act. If they stand in a causal relation to it, or "part of its condition," or if generated by a feeling produced by the act or event, and spring from it, they are part of the res gestæ.

In Mayes v. State, 64 M., 329, a test is laid down as the true

rule, which rejects the theory, that the words spoken were made so as to preclude the idea of fabrication.   I submit that this is not in accord with the authorities, or in reason altogether satisfactory.   It may not be the only test, but surely, it must have weight unless the coincidence of time must exist.   Words are part of *res gestæ*, not *because* they spring out of the act, but because they truly characterize the act, because they speak the truth as to the intent and purpose of the act.   And if they be so related to the act, as from them the truth may reasonably be inferred as to the act, they certainly become relevant in illustrating and interpreting it, and should be admitted; and in determining this, the question of fabrication is a circumstance worthy of weight.   Whart. Crim. Ev., §§ 263, 296; *Mitchum* v· *State*, 11 Ga., 615; *Little* v. *State*, 25 Grattan, 921: *Com.* v. *M'Pike*, 3 Cush, 181; *State* v. *Nash*, 10 Iowa, 81.

The refusal to admit proof that deceased habitually went armed is a conclusive error.  *Moriarty* v. *State*, 62 Miss.; *Spivey* v. *State*, 58 Miss.; Central L. Journal, Vol. xxvi, 579, and cases there cited.

*L. W. Magruder*, argued the case orally.

*T. M. Miller*, Attorney General, for the State.

There was no error that can be affirmed, at least with any satisfaction, of the refusal of the court to allow Adams (the J. P.) to testify to the reason given by defendant for the shooting—*i. e.*, that defendant had threatened his life and he shot to protect himself, etc.   In the first place the reason given was wholly insufficient as a justification as stated to Adams, but secondly and mainly the declaration was no part of the *res gestæ*. .

The defendant had killed Cox and was going away with his wife.  Had said to her that he told her to stay at home; had been called on to surrender by Jones, the constable, who drew a pistol on him; had surrendered and was brought back a prisoner into the office where he had begun the shooting.   Although the time was short, as estimated by the witness, under the circumstances it was not error to exclude the declaration.   It had taken the form of narrative, was not the event itself speaking through unconscious lips.   *Mayes* v. *State*, 64 Miss., 329.

It is next urged that the court erred in refusing to allow the

defendant to prove that the deceased habitually went armed with deadly weapons. Two cases are found which would seem to allow such evidence. But the text books generally that treat of criminal jurisprudence go only to the extent of declaring that, when such evidence is relied on, the defendant may prove the reputation of deceased as vindictive, turbulent and dangerous. In this case, even if it be conceded, as an abstract proposition, that evidence that deceased habitually carried deadly weapons is admissible, there was 'no error in excluding it, because the alleged threat made · by deceased, followed, as defendant says, by a movement of the hand toward the pocket, was *conditional.*

This, therefore, is like the case of *State* v. *Vance*, 32 La. Ann., 1178, in which such evidence was held to be properly rejected, where the ground laid was that the statement of deceased, that if accused continued to bother him about a certain debt he would kill him. Here, Cox is alleged to have said to defendant, if he didn't quit bothering him about the cost bill he would kill him, or to that effect. The threat being only conditional, the defendant had no right to take extreme measures so promptly.

It would seem that in cases where self-defence is relied on it ought to be sufficient to allow the defendant to prove his knowledge of the reputation of deceased, as a vindictive, turbulent and dangerous man, in connection with specific threats against him. To allow evidence of particular acts would raise interminable side issues. See Wharton on Criminal Ev., title, Character of Deceased, Vol. 26, Cont. L. J., p. 515.

I think no case can be found that would admit even evidence of vindictive character, when the killing was on account of a conditional threat. Here, in the presence of a conservator of the peace, who need only to have had his attention called to the threat, if any, to secure interference, the killing can only be looked upon as a wanton, cruel murder.

The Attorney-General made an oral argument.

Arnold, C. J., delivered the opinion of the Court.

There is testimony in the record that Cox, the deceased, made threats against the life of appellant a short time before

the homicide, and that these threats had been communicated to appellant; that the deceased was a violent, vindictive and dangerous man, and that these characteristics were known to appellant, and that while appellant and deceased were discussing the settlement of a controversy between them pending in a justices' court, deceased declared several times, in a loud and angry manner, he would pay nothing, and then cursed appellant and said, "I will kill you if you keep on bothering me, or if you say anything more to me about it, and raised up and run his hand into his pocket as if he was going to kill me sure enough," when appellant drew his pistol and fired.

In this state of case appellant offered testimony to show that deceased habitually went armed with concealed deadly weapons, and that appellant was cognizant of this fact, and that deceased was generally reputed, in the community in which he lived, to go so armed, and that this was known to appellant. The court refused to allow this testimony to go to the jury, and in doing so, it erred.

Under the circumstances stated, it was for the jury to determine whether or not appellant had reasonable cause to apprehend danger to his life or limb at the time of the of killing, and to enable the jury to do this fairly and intelligently, by putting themselves as far as possible in the place of the appellant at the time of the killing and viewing the situation as it appeared to him, the testimony should have been admitted. The same principle which justified the admission of evidence as to the character and threats of the deceased, rendered the excluded testimony competent. *Payne* v. *Com.*, 1 Met. (Ky.), 370; *The State* v. *Smith*, 12 Richardson, 430; *Moriarty* v. *The State*, 62 Miss. 654; *State* v. *Graham*, 61 Iowa, 608.

Appellant also tendered witnesses to prove that the deceased had been engaged in frequent fights in which he used deadly weapons, and that the witnesses had seen him in several fights in which he made deadly assaults on his antagonists, and that appellant knew these facts. The court properly sustained objections to this testimony. The character of the deceased could not be shown by particular acts of misconduct on his part,

in no way connected with the accused. That, could be proved only by evidence of his general reputation. 1 Bish. Cr. Pro., Sec. 1117 ; 2 Ib., sec. 617. *Moriarty* v. *The State*, 62 Miss., 654.

It was not error for the court to refuse to allow appellant to prove the declaration made by him after he was arrested, and but little more than a minute after the shooting, as to the reason why he shot the deceased. Such declaration was not a part of anything then being done, but a mere statement in regard to a past transaction, and was therefore incompetent. *Mayes* v. *The State*, 64 Miss., 329.

As a new trial must be awarded on account of the error above indicated, it seems unnecessary to consider other errors assigned.

*Reversed and remanded.*