NORWOOD & BUTTERFIELD CO. v. J. B. ANDREWS.     '     71   641
80   513

1. CORPORATION. *Reward. Implied liability for.*

> A private corporation, through 'its officers or agents, may incur liability for a reward offered for the arrest of persons unlawfully interfering with its property or business.     •

2. WITNESS. *Character for truth. Former residence.*

> It is competent to show the bad character of a witness for truth in a neighborhood where he had lived for many years, and from which he had removed two years before.

3. INSTRUCTION. *Aiming at witness. General character.*

> Although a party is a witness in his own behalf, testimony having been offered to impeach his character, it is error to refuse, as aimed at him, an instruction to the effect that the jury is the judge of the credibility of witnesses, and may, if the evidence justifies it, disregard the testimony of a witness, and may also consider the interest of a witness and his character for truth, if shown, in determining the weight to be given his testimony.

FROM the circuit court of Lincoln county.

HON. J. B. CHRISMAN, Judge.

Action begun in a justice court by appellee against the Norwood & Butterfield Co., a corporation, and C. S. Butterfield for $200, balance claimed to be due plaintiff on a contract for a reward. Plaintiff recovered judgment for the amount claimed against both defendants, and they appealed to the circuit court, where the suit was dismissed as to the defendant, C. S. Butterfield, and there was a trial on the plea of general denial by the other defendant.

The appellant is a corporation created under the laws of the state of Illinois, domiciled in Lincoln county, in this state, engaged in the manufacture and sale of lumber. By its charter, the only power expressly given the corporation is the "manufacturing and dealing in lumber and other mer-

chandise." It owns a large lumber mill and a considerable
tract of land, and employs a number of persons in the con-
duct of its business, among these one McNair, who hauled
logs for the mill, and McNair had in his employ Bange
Connelly and Moses Mimms and his wife, who lived in a
house belonging to the company. The plaintiff's testimony
tended to show that certain lawless persons had been inter-
fering with the defendant's employes and business, and, on
one occasion, in the night time, had set fire to and shot into
the house occupied by Connelly, wounding the wife of
Mimms; that, in order to protect the interests of the corpo-
ration, C. S. Butterfield, who was secretary and treasurer of
the corporation, made a contract with the plaintiff, Andrews,
by which the company promised to pay him the reward for
detecting and bringing to punishment the guilty parties. As
the only question passed upon in the opinion of the court on
this branch of the case is as to the power of the defendant
corporation to incur liability for a reward offered under such
circumstances, it is not necessary to set out the testimony,
which was conflicting, as to the terms of the alleged contract.
For the plaintiff, the court instructed the jury that the cor-
poration, through its agents, had the power to incur the
liability.

The plaintiff testified as a witness in his own behalf, and
the defendant introduced several witnesses to show that he
was unworthy of belief. One of these (Rayburn) testified
that he lived in an adjoining county, and had known plaint-
iff from boyhood—about twenty-five or thirty years; that
plaintiff lived in the same neighborhood with him up to
within about two years before the trial, when he removed to
Lincoln county. The witness was asked by defendant's
counsel if he knew plaintiff's general reputation for truth in
the community in which he was raised, and in which he lived
until his removal to Lincoln county. This was objected to,
whereupon defendant's counsel stated to the court that they
expected to prove that the plaintiff, after removing from

Pike county two years before, had lived in several places, and now resided in Lincoln county, where he had been only about six weeks. Thereupon the court asked the witness if he knew plaintiff's reputation in Lincoln county, and he answered that he did not. The objection was sustained, and the witness was not permitted to testify as to the general reputation of plaintiff in Pike county, whereupon defendant excepted.

Defendant's refused instruction, which the court holds should have been given, is as follows: "The jury are the judges of the credibility of the witnesses, and they may, if the circumstances and the other evidence justify so doing in their minds, disregard the testimony of a witness altogether; and they may consider the interest of a witness in the result, and his character for truth and veracity, if shown by the evidence, either direct or circumstantial, in determining the weight, or the want of it, to be given the testimony of any witness." On this instruction the court indorsed: "Refused because distinctly aimed at the plaintiff."

Judgment for plaintiff. Defendant appeals.

*R. H. Thompson*, for appellant.

1. In showing the reputation of a witness for truth, the inquiry must be as to the general reputation where he is best known. 1 Greenleaf on Ev., § 461. This is the common sense of the matter. It cannot be presumed that plaintiff was better known at the several points at which he had temporarily resided, and in Lincoln county, where he had lived only six weeks, than at the place where he had lived from boyhood, and from which he had removed only two years previously. If our position as to this is not correct, a witness who is a transient person could not be impeached.

2. The section of defendant's charter conferring power, is, in its terms, exceedingly limited. Certainly, if the corporation could make the contract, all other corporations can do so, and if this be true, then there is an end to legislative in-

tent in limiting the powers of corporations. That corporations are not empowered to offer rewards generally seems too clear for disputation. While we find some authorities which hold that they have the implied power to do so for the apprehension or conviction of persons who have committed offenses against their property, yet the proof in this case is too meager for the application of such a rule. It does not appear that Connelly or Mimms were employed about the business of the corporation, and the fact that the house might be considered as belonging to it, did not establish its ownership, and the interference with the business of the company was not shown to be the shooting and burning contracted about.

3. It would tax the ingenuity to point out an objection to defendant's fifth instruction. How the court discovered that it was aimed at the plaintiff does not appear. But, if the assumption be indulged in that it was so aimed, that is not a valid reason for denying the instruction. The court was evidently misled by the decisions of this court which rest on our statute enabling defendants to testify in criminal cases. *Buckley* v. *State,* 62 Miss., 705, and *Woods* v. *State,* 67 *Ib.,* 575. In the first of these, the instruction passed on was held to annul the statute, in effect, and the second case rests upon the first. The application in this case of such a rule would abolish, in all cases, instructions on the credibility of witnesses.

*A. C. McNair,* for appellee.

1. In 1 Greenleaf on Ev., § 461, cited by opposite counsel, it is said that the proper mode of examining into the general reputation, is to inquire of the witness whether he knows the general reputation of the person in question among his neighbors. The inquiry is as to the reputation among those who are his neighbors at the time of the inquiry, and not such as were his neighbors years before. Worcester defines " neighbor " to be one who lives near another. On this point,

see *Chess* v. *Chess*, 21 Am. Dec., 350. It does not appear how far the witness lived from Lincoln county, and he did not know the general reputation of plaintiff in the community where he lived at the time of trial. But, if the court erred as to this, the defendant was not prejudiced, because other witnesses testified as to the facts sought to be shown by the witness Rayburn.

2. Plaintiff's instructions correctly announce the law. The defendant had large milling interests, and had in its employment many persons. Bange Connelly and Moses Mimms were indirectly in its employ, and were living in a house owned by it. In order to protect its property and business, the corporation employed plaintiff as a detective, with a view to arresting and punishing the guilty parties. This it had ample authority to do. 21 Am. & Eng. Enc. L., 390, note; *Railroad Co.* v. *Cheatham*, 85 Ala., 292, s.c. 7 Am. St. R., 48.

3. I am not prepared to say that defendant's fifth instruction should have been refused. If, however, its refusal was improper, it was harmless, and is not reversible error. The instruction would have availed the plaintiff as much as the defendant. It is not clear that its refusal was error. It is manifest that it was aimed at the plaintiff, and this is not gainsaid by opposite counsel.

CAMPBELL, C. J., delivered the opinion of the court.

We entertain no doubt of the right of the defendant corporation to incur liability for a reward promised under the circumstances shown in evidence. *Railroad Co.* v. *Cheatham*, 85 Ala., 292; *Ricord* v. *Central, etc.*, 15 Nev., 167; *Amer. Ex. Co.* v. *Patterson*, 73 Ind., 430.

But the judgment recovered must be reversed for the error of the court in refusing to permit evidence of the bad character of the plaintiff for veracity in the neighborhood where he had lived many years, and from which he had removed two years before. 1 Rice on Ev., 630; *Sleeper* v. *Van*

*Middlesworth*, 4 Denio, 431; *Rathbun* v. *Ross*, 46 Barbour, 127; *Martin* v. *Martin*, 25 Ala., 201; *Sorrelle* v. *Craig*, 9 *Ib.*, 534; *People* v. *Abbot*, 19 Wend., 192.

If there was nothing in the books in support of this view, we would not hesitate to announce one so obviously just. To hold otherwise, would preclude the possibility of impeaching the character of one who had changed his residence, in many cases. The rule must work both ways, and, under the rule we condemn, one who had maintained an unblemished reputation through a long life, in case of removal and occasion in his new home to prove his good character where he had spent his life, would be denied the right to call witnesses who had known him at his former residence, because not acquainted with his reputation at his new place of abode. And one who had not lived long enough at a place to become known there would not be able to prove reputation at all. The true inquiry is as to one's reputation—the estimation of those who know him. Generally, they are his neighbors, but circumstances alter cases, and the law conforms reasonably to altered circumstances, in order to accomplish its objects.

The instruction asked by the defendant as to the credibility of witnesses was improperly refused. That it was aimed at the plaintiff was not an objection to it, for a good deal of impeaching evidence had been aimed at him.

*Reversed, and remanded for a new trial.*