# Smith *v.* State.

(Division A.  Oct. 17, 1938.)

[183 So. 699.  No. 33271.]

J. P. & A. K. Edwards, of Mendenhall, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

**McGowen, J.**, delivered the opinion of the court.

Appellant was convicted of manslaughter in the Circuit Court of Simpson County, and sentenced to serve a term of three years in the state penitentiary.

The evidence tended to show that Joe Drummond, the deceased, weighed about one hundred and seventy-five pounds, the defendant, about one hundred and thirty pounds, and the evidence tended to show that the de-

ceased was a very strong man, that he could take the defendant by the ears and throw him over on the ground. At about three o'clock in the morning, appellant claims that he had fled from deceased at Belpine, some miles, to the home of his aunt and had been there about forty minutes when the deceased came into the house and said to appellant "You s— of a b—, I'm still on your trail." The man of the house stopped any altercation at that time, and the people there went to sleep, and so far as the State is concerned, no evidence was offered by any eye-witnesses as to the details of the homicide. The appellant's evidence was to the effect that the deceased had, in effect, threatened to choke him (appellant) to death, and had pursued him to the wall, threw him on the bed and had him down on the bed when he shot the deceased with a pistol. The appellant's version of the details of the difficulty on the bed at the time of the shooting was supported by the owner of the home. The State contented itself with evidence that the deceased was killed by the appellant by being shot with a pistol, a deadly weapon, and some contradictory statements of that of the appellant to the effect that he had shot the deceased in resistance of an attack with a knife. On the trial, however, the main defense was that because of the great superiority of strength and age of the deceased, that appellant shot in self-defense

We think the evidence was sufficient to go to the jury, and will not disturb the verdict on the ground that it was against the overwhelming weight of the evidence. Second, it is insisted that the trial court improperly restricted the evidence as to the bad reputation of deceased and limited the proof thereof to a period of about the three to eight weeks in and around Braxton, Mississippi.

It was a material question in the light of defense as to the general reputation in the community for peace and violence of the deceased. On this point, the appellant offered several witnesses who testified, out of the

presence of the jury, that they had known deceased all his life, that they knew his general reputation for peace and violence and that it was bad, that he had lived in a community in Simpson County sixteen or eighteen miles from Braxton until a period of three to six years before this homicide, that he removed from that community and had lived in the Delta and in Jackson, and just a few weeks before this homicide had returned to Braxton, near which place the homicide occurred. The court, on the objection of the State, limited the proof to his reputation for the few weeks the deceased had lived near Braxton. After the court had excluded the evidence of a witness on the above ground, the appellant's counsel stated to the court that he would be able to prove that the defendant had knowledge of the general reputation of the deceased for peace and violence at the time of the homicide, and before this evidence was offered, the defendant had shown the details of the homicide and position of the bodies by the only other eyewitness.

In excluding the evidence of the appellant on the point of general reputation, we think the court below erred. In this case, it was a question for the jury whether or not the appellant had reasonable ground to apprehend danger to his life or limb at the time of the killing, or great bodily harm at the hands of the deceased. Evidence of the reputation of the deceased for peace or violence was competent and shed light upon the actions of the appellant and deceased at the time of the homicide, if that reputation was known to the accused. See Wesley v. State, 37 Miss. 347; Moriarty v. State, 62 Miss. 654; King v. State, 65 Miss. 576, 5 So. 97, and Sprinkle v. State, 137 Miss. 731, 734, 102 So. 844. It will be observed that the deceased had only resided in the community where the homicide occurred a few weeks, and that the appellant offered evidence of his bad reputation in the community from which he had removed three

years before and offered to connect it with the same reputation acquired after his removal to the Delta. This evidence was offered at a time when, according to the eye-witness, the accused and deceased were in a difficulty, appellant was held upon the bed by the deceased; and counsel stated that appellant knew the general reputation of the deceased for peace and violence as bad at the time of the homicide. To the same effect, the appellant swore, as a witness for himself.

We think, under the weight of authority, this evidence was competent as tending to shed light upon the action of the appellant at the time of the homicide, and as to who was the aggressor, and as to whether or not, as a reasonable man, he had reason to apprehend that he would suffer death or great bodily harm from the deceased at the moment he fired the gun. The appellant, in this state of the case, was not confined in such proof to the community in which the homicide occurred, or to the time immediately preceding the homicide. See Eng. Ency. of Law, Vol. 3, Page 30, and Note 91.

This court, in a civil case, Norwood Co. v. Andrews, 71 Miss. 641, 16 So. 262, held that it was competent to show the bad character of a witness for truth in a neighborhood where he had lived many years and from which he had moved two years before. In that case the court, after announcing the ruling, said: "If there was nothing in the books in support of this view, we would not hesitate to announce one so obviously just. To hold otherwise would preclude the possibility of impeaching the character of one who had changed his residence, in many cases. The rule must work both ways, and, under the rule we condemn, one who had maintained an unblemished reputation through a long life, in case of removal and occasion in his new home to prove his good character where he had spent his life, would be denied the right to call witnesses who had known him at his former residence, because not acquainted with his reputation at his new place of abode. And one who had

not lived long enough at a place to become known there would not be able to prove reputation at all. The true inquiry is as to one's reputation,—the estimation of those who know him. Generally they are his neighbors, but circumstances alter cases, and the law conforms reasonably to altered circumstances, in order to accomplish its objects.''

The reputation of a person as to traits of character such as peace or violence and truth and veracity, either good or bad, or such as are not easily changed, and the remoteness in time is ordinarily in such cases for the jury.

This is a very close case on the facts, and the State's case is not a strong one.

Other errors are assigned which do not call for comment from us.

Reversed and remanded.