FRANK THOMPSON *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Evidence. Previous difficulties.*
    On the trial of a murder case testimony touching previous difficulties between defendant and deceased, and between defendant and his wife, a daughter of deceased, is inadmissible.

2. SAME. *Cross-examination of accused. Conversations.*
    It is error to permit the defendant in a murder case, who testified in his own behalf, to be cross-examined touching statements made by him in a certain conversation after the court had properly excluded the testimony of other witnesses concerning the conversation.

FROM the circuit court of Monroe county.

HON. EUGENE O. SYKES, Judge.

Thompson, the appellant, was indicted for the murder of one James McGraw; he was tried and convicted of manslaughter and appealed to the supreme court.

On the 17th day of June, 1903, appellant was going south in the public road, not far from his home, and met deceased, McGraw, and his wife in a buggy, going north. The difficulty which resulted in the killing of McGraw occurred immediately upon the meeting of the parties. The only eyewitnesses were

Thompson himself and the wife of McGraw, who was in the buggy with him at the time of the homicide.  Mrs. McGraw testified as follows: "We had started to Aberdeen.  Along the way we met Frank Thompson in the middle of the road.  In half a second after I saw him he caught hold of the horse's bridle, just so, and shot Mr. McGraw, and when he caught hold of the bridle he said, 'You are going to town this morning to settle this, are you?  God damn your soul to hell!' and shot him twice and run."  Defendant's version of the difficulty was that deceased, upon being saluted with the usual "Good morning, Mr. McGraw," began to draw out his pistol, which became tangled in the lap robe or some other furnishing of the buggy, when defendant drew his pistol and shot deceased.  The evidence further showed that Thompson married a daughter of deceased in January, 1903, and at the time of the marriage McGraw and his family were living in the same house with the defendant, Thompson; that in a short time after the marriage disagreements began to occur, and McGraw and his family moved away; that Thompson's wife soon became dissatisfied, and abandoned her home and went to live with her father's family.  A good deal of evidence was brought out on the trial in regard to the frequent troubles of the family, and the difficulty between Thompson and deceased.  The state was permitted to show, over defendant's objection, that on the day before the homicide defendant passed the field where deceased was plowing, and had a wordy altercation with him, all the details of which were admitted in evidence.

*George C. Paine,* and *C. L. Tubb,* for appellant.

Admitting the testimony of the conduct and speech of appellant to the family of the McGraws months prior to the homicide, and the conduct of appellant at the home of the McGraws on the evening prior to the homicide, to go to the jury, evidently diverted the minds of the jury from the issue then submitted to them.

There is no verdict the jury could have rendered from the testimony of the eyewitnesses other than guilty of murder or not guilty. There was no element of manslaughter in the testimony of the eyewitnesses. In the case of *Raines* v. *State,* 81 Miss., 497, this court, speaking through Judge Terral, says: "It is a general rule of law that evidence must be confined to the point in issue, and that in criminal cases especially the facts laid before the jury should consist exclusively of the transaction which forms the subject of the indictment, and that it is only where the previous crime is connected with the one for which the defendant is on trial, and where it sheds light upon the motive of the accused, that it can be proved against him, unless it forms a chain of facts so intimately connected that the whole must be heard in order to interpret its several parts."

Certainly the conduct of the appellant at the house of the McGraws the evening prior to the homicide can shed no light on the motive of the appellant, because Mrs. Barnett says "the appellant told her the last thing that evening to say to" Mr. McGraw that he, appellant, was sorry and asked for pardon and sued for peace. He was evidently through with the horrible matter, it was buried so far as he was concerned, and he then left the vicinity of the McGraw home and went home. In so far as shedding light on the conduct of the appellant on the morning of the homicide, the occurrences of that evening, and explaining the motives of the appellant, they do not do so, but, on the contrary, evidence the fact that these difficulties were entirely separate and distinct from the difficulty that terminated in the death of McGraw. This testimony was so harmful and illegal to the side of the appellant as to cause the jury to overlook the real issue in the case.

*J. N. Flowers,* assistant attorney-general, for appellee.

It may as well be admitted here that the trial court permitted a vast deal of incompetent testimony to go to the jury. The details of a previous difficulty were shown; the falling out be-

tween the accused and his wife and her family; the reasons for the falling out; the conduct of Mrs. McGraw in making two or three trips to Thompson's home to bring her daughter away and carry her back. The deceased was the father-in-law of the accused.

But this is a rare case in which, it will strike the court, the errors worked to the advantage of the man on trial. The jury took the side of the accused and were convinced that he had been wronged and harassed without just cause. We think that if the jury had been confined to the competent testimony and had heard no other they would very likely have rendered a verdict for murder. At every departure some facts were developed to show that the defendant had been troubled, oppressed, and driven to extreme measures. For an instance, proof of the fact of a previous difficulty would have tended to show malice, but this conclusion is met, or at least the effect of it is mollified, by the incompetent testimony as to the details of that difficulty which show that the defendant was not altogether to blame.

Another general reflection is here ventured that the incompetent testimony compained of, as shown by this record, all of which it is insisted worked to the advantage of the accused, was brought out by counsel for defendant or was rendered admissible by something which had been brought out by them. In fact, the doors were opened by counsel for defendant, and after the rules of evidence were once ignored they seem to have been suspended for the purposes of that trial thenceforth.

WHITFIELD, C. J., delivered the opinion of the court.

The court ought not to have permitted the details of the previous difficulty to be shown in evidence, nor the falling out between the accused and his wife and her family, nor the reason of that falling out, nor the conduct of Mrs. McGraw in making two or three trips to Thompson's home to bring her daughter away. All this testimony should have been excluded as foreign to the issue which the jury was trying. It is true that in the

cross-examination of Mrs. McGraw some of this testimony was drawn out by the counsel for defendant, particularly with respect to the three separations between the husband and wife, and with reference to Mr. McGraw's reasons for leaving Frank Thompson's place; and it is further true that the state objected and the court overruled the objection. But there is very much more of the testimony, along all these lines, introduced by the state over the objection of the defendant, and erroneously admitted. We specify particularly here the testimony of Mrs. Barnett, who was permitted to detail at great length the conduct of defendant in riding up and down in front of McGraw's house, the day before the killing, with a shotgun, daring him out, cursing, and disturbing the entire family; and the testimony of Fannie May McGraw to the same effect. The necessarily evil effect of admitting this testimony introducing a number of irrelevant issues is plainly seen in the examination and cross-examination of the defendant, which was very lengthy. Counsel for defendant went into all these matters, deeming it essential, since the testimony had been admitted, that defendant should make the best explanation that he could; and the counsel for the state naturally crossed on all these irrelevant issues. One illustration will suffice: The court had, earlier in the trial, excluded the testimony of Bob Dickerson on the objection of the defense, and yet the defendant was allowed to be asked on cross-examination this question: "Didn't you say to Bob Dickerson, Sally Dickerson, and Nels Paine, on the morning of the killing, that if you met him (meaning McGraw) you or him one would eat breakfast in hell?" It is true that defendant denied making the statement, and his denial was not contradicted, but no such question should have been asked in view of the fact that the court had correctly excluded the testimony of Dickerson early in the trial, which testimony of Dickerson was about the very conversation when Nels Paine and Sally Dickerson were present the morning of the killing. If the testimony of Dickerson was incompetent about this very conversation, upon what theory

should the district attorney be permitted to ask the defendant about an incompetent conversation already excluded? We only add this observation, that the testimony of Mrs. McGraw and of the defendant are in direct conflict as to what occurred at the time of the killing, and in view of this fact it is not possible for us to say that these errors are not reversible errors.

<em>Reversed and remanded.</em>