### RICH v. STATE.

[86 South. 770, No. 21534.]

1. HOMICIDE. *Details of previous disconnected difficulty inadmissible.*
Details of a previous disconnected difficulty between the parties are inadmissible in the trial of the subsequent offense.

2. CRIMINAL LAW. '*Threats made by coconspirator out of presence of accused inadmissible before conspiracy is established.*
In joint indictment for murder, threats made out of presence of accused by coconspirators before conspiracy is established are inadmissible against accused.

3. HOMICIDE. *Conspiracy instruction erroneous when not supported by evidence.*
It is error for the court to grant a conspiracy instruction when the evidence is insufficient to support it.

APPEAL from circuit court of Perry county.

HON. R. S. HALL, Judge.

Sam Rich was convicted of murder, and he appeals. Reversed and remanded.

*Wells, Stevens & Jones,* for appellants.

In our original brief we overlooked citing and calling to the attention of the court *Gillum* v. *The State*, 62 Miss.

547, the case cited with approval in *Harper* v. *The State,*
83 Miss., which we are very much relying on and which
we have discussed in our original brief.   In the Gillum
case this court said:

"The threats and declarations of Thomas and Harry
Gillum not made in the presence of the defendant should
not have been admitted against him.   After a conspiracy
has been established by evidence *aliunde,* the declarations
and acts of each conspirator in the furtherance of the com-
mon design are admissible against all, but it is necessary
that such acts and declarations be shown to have been made
or done in the prosecution of the common purpose.   They
are admissible as parts of the *res gestae,* and declarations
or admissions which are not themselves acts and do not
illustrate or interpret contemporaneous acts do not par-
take of the nature of *res gestae,* and are · inadmissible
against any others save those by whom they are made.
1 Phillips on Ev., 205;   Wharton on Criminal Evidence,
sec. 698.   The threats and declarations of Thomas and
Harry Gillum which were proved against the defendant
were none of them made while the parties were engagd in
any attempt to kill or injure the deceased."

Tested by the Gillum case the statement of Hardee
Dykes as testified to by Mrs. Kyser; to the effect, "I ought
to have killed the son of a bitch," is thoroughly incompetent
was not a part of the *res gestae,* was not a declaration in
furtherance of any design to commit murder out on the
highway, and the statement could only operate to inflame
the minds of the jury against all the defendants, including
Sam Rich.   Tested by this decision the declaration made
out of the presence of Sam Rich, could in no wise bind
Sam Rich, and was incompetent.   It was a very inflam-
matory statement.   And so each of the statements com-
plained of in our original brief is condemned by the Gillum
case as also by the Harper case.   We emphasize the lan-
guage of the Harper case.

It is clearly not the law that a bystander or one who
goes with another person upon a lawful mission or at

124 Miss—18.

least without any criminal intention on his part, can be found guilty of murder without affirmative proof of some word of encouragement spoken or offered, or act committed, on his part evincing a desire to participate in the killing.

Assuming that the testimony of Harvey Dykes and Bruce Edwards is true, a conclusion which cannot be escaped then Sam Rich cannot possibly be guilty of murder without the case for the state being tested by this language of the Harper case, and the instruction which we complain of did not give Sam Rich the benefit of this law. It does not require that the jury must believe he was present with malice, ready, able and willing to render some assistance.

In *State* v. *Cox*, 65 Mo. 29, quoted in the footnotes to the First Ed. of the American and English Encyclopedia of law, footnote 1, page 453, an instruction attempting to authorize the conviction of defendant for murder in the first degree where he was simply present as an aider or abettor was condemned. The material portion of the instruction and the criticism in the footnotes is as follows:

"The mere mental approval by a bystander of a murder committed in his presence does not make him an accomplice in the murder; and where the judge at trial charges as follows: That it is not necessary for the state to prove that the defendant by his own hand shot and killed the deceased; for if he was present, aiding or abetting, or counselling, or advising or inciting, or encouraging, or approving of some other persons in shooting and killing the deceased, he is guilty of murder in the first degree, it was held, error; the court saying: if an explanation of the term aiding and abetting as used in our statute, or in the common law definition of an accomplice, should be deemed necessary, it is proper that the explanatory terms used should convey a correct idea of the meaning of the offense. The court probablly did not mean to hold that the mere mental approval by a bystander of a murder committed in his presence would make such bystander a

principal in the murder, yet the use of the disjunctive "or" between the various terms employed to describe the crime of an accomplice, necessarily leads to this interpretation of the instruction. The words "or approving of" have no place in legal phraseology to explain the meaning of the words 'to' and 'abet.' The fact itself is incapable of proof. Mental operations, not accompanied with any action or language, are beyond the reach of testimony. There was no necessity for the introduction of these words in the instruction, and they may not have misled the jury, but when a party is on trial for his life, he is entitled to a correct exposition of the law touching his case." .

It has always been the law that mere presence or even a mental approval of a crime does not make one a participant and guilty of himself committing the crime. Mr. Blackstone lays down the proposition that mental approval or a failure to make any attempt to prevent a homicide, or chase or make an outcry against the guilty person, cannot be charged up against the person and is no evidence of his guilt. We believe that the second theory of the state was a theory of the state's case improperly submitted to the jury and is responsible for appellant's conviction. Even a conspiracy to go into the town of Richton and whip Virginius Walley would not be a conspiracy to kill Milstead, and after the street fight in Richton any conspiracy to whip Walley would be at an end. But we say this without in any wise conceding that Sam Rich was a party to any plan or purpose to whip Walley. His presence in Richton was without any pre-arrangement or understanding, and his presence and acts at and during the street fight are consistent with innocence and good faith. We have an abiding faith in his innocence. If he is given a new trial he will be exonerated. His fate is with the court, and his hope is in the court.

*Wm. Hemingway,* for appellee.

The admission of the details of the fight previous to the killing is complained of by appellant but at the same time

the threats which were said to have been made by Milstead and Walley, which occurred after the first fight, are urged by appellant as excuse for carrying a gun as a self-defense. In other words, the appellant desired to select the part of the evidence to be admitted and to use only those details which are to his advantage. These details were admissible. *Shields* v. *State*, 87 Miss. 429, 39 So. 1010; *Brown* v. *State*, 87 Miss. 800, 40 So. 1009; *Clemons* v. *State*, 92 Miss. 244, 45 So. 834; *Lucas* v. *State*, 109 Miss. 82, 67 So. 851.

If the evidence of the first difficulty had not been admitted, then there would have been no defense and the court must have regarded the testimony of the two men who claimed they did the shooting as pure fabrications. They appear to be very weak in some points; the expression "I don't know," occurs frequently in answering questions on material points.

The state did not change its theory of the case. It had direct testimony against Sam Rich and the co-defendants having presented a different matter and claiming that others fired the shots, the state had to meet this defense.

Instructions. The state only asked two instructions; one on this evidence, the other on the evidence presented by the defense. It is the law that instructions must be based on the evidence, and where there is evidenc to support an instruction it cannot be refused. Defendant cannot introduce evidence, then claim that an instruction as based on that evidence, is erroneous, and charge the state with having shifted its attack. It would be very gratifying to defendant not doubt, to base this case on the testimony of Dykes and Edwards. He admitted they did the killing, but by what reason does defendant exclude from the consideration of the court the testimony of Mr. and Mrs. Walley. It should be noticed that all of the material statements of defendants are contradicted at some time by some person, and their testimony should be very carefully scrutinized.

The *Harper case*, 83 Miss. 402, is not in point here for the reason that it is uncontradicted that Harper did not

do any shooting, while in this case it is fully asserted that Sam Rich did the shooting.

Conspiracy. The details of the fight was a conspiracy. All of the defendants were on the scene. Each one discharged a certain part of the difficulty. Sam Rich knew that something was going to happen, as stated in the Anderson Mercantile Company's Store. He walked down the street with the others when they approached Walley. When Dykes became afraid of the knife in Walley's hand, he called to Sam Rich for help. When Freeman attempted to get the pistol to help Walley, Sam Rich secured it first. When the others were asked at the wagon as to what they intended to do to Walley and Milstead, Sam was on the wagon. When in pursuance of the repeated threats, Dykes and Edwards armed themselves, Sam's wagon was the means of transportation. He was there on the scene, alert and watchful, quick in action and heavy of fist.

The court's attention is earnestly directed to the eighteen pages of the instructions for defendant, in which every phase of this case and the law is submitted to the jury. Two hypotheses were submitted. The jury was instructed that if they believed Dykes and Edwards did the killing they should acquit. All the lawyers, expert drawers of instructions, should feel a pride in instructions written for the defendant in this case. If there was any error in the instructions for the state they were all cured by the instructions for the defendant.

Dykes and Edwards did not assume all the blame in this case. Their testimony gave them the only chance they had for an escape, otherwise they would have been convicted of murder. They took a chance of proving self-defense, and in testifying that they did not know who fired the first shot, thereby confusing the evidence and creating an opportunity to perplex the jury. They were not laying down their lives for anybody. They were testifying vociferously to the only way out.

It will be noted on page 86 of the transcript that Sam Rich, in addition to his other acts of participation was on

an inquiry for a gun. On page 97 a witness testified that both the Edwards boys were on the front wagon with. Rich instead of one Edwards and one Dykes boy. Counsel has a biblical quotation in his brief, and in view of the evidence by defendants, I beg to refer the court to the quotation, "And with one accord they all began to make excuses."

It is respectfully submitted that there was no reversible error in this case.

HOLDEN, J., delivered the opinion of the court.

The appellant, Sam Rich, was jointly indicted with Hardee Dykes, Harvey Dykes, Bruce Edwards, Daniel Edwards, Bud Plumer, and Ben Jeffcoats, for the murder of B. M. Milstead. A severance was granted, Rich was found guilty, and sentenced to imprisonment for life, from which judgment he appeals.

The story of the tragedy from beginning to end is so lengthy that we shall not undertake to state it in detail, but will only mention the facts of the case necessary to understand the decision. The killing took place about one mile north of Richton on the public road at first dark. The deceased, Milstead, was marshal of the town of Richton. Virginius Walley lived out a few miles north of Richton on the public road mentioned. The appellant, Sam Rich, and the Dykes brothers and Bruce Edwards also lived out on and traveled this public road. All of the parties mentioned who lived in the country went to Richton in the afternoon of the day of the tragedy. They drove their respective wagons there for the purpose of loading them with oats and fertilizer to be carried back to their homes, and all the parties were there on peaceful and legitimate missions. Some time after all of them had arrived at Richton a difficulty started between Hardee Dykes and Virginius Walley in which Walley was considerably worsted. Harvey Dykes came up and took a hand in this difficulty against Walley, when Freeman, a friend and employee of

Walley, interfered for Walley, whereupon he was struck by Daniel Edwards. The fight then became general. Appellant Rich took part with Dykes in assaulting Walley while he was scuffling on the ground. In the meantime the appellant, Sam Rich, when requested by Dykes to do so, went to Walley's automobile and took Walley's pistol, ejected the shells and afterwards turned it over by request to the said city marshal, Milstead. While the fight was going on, Milstead, the marshal, took a hand in it, and incidentally clubbed a bystander with Walley's pistol, and then Walley cursed the appellant, Rich, whereupon Rich knocked him down with his fist.

Some of the parties were considerably bruised in the affray. Virginius Walley retired to a doctor's office for treatment, and, after his wounds were dressed, Milstead, the marshal took him in a car to Walley's home a few miles north of Richton on the public road heretofore mentioned.

After Walley left for home the Dykes brothers, Bruce Edwards, and the appellant, Sam Rich, started with their loaded wagons homeward on the said public road. Sam Rich was driving a pair of home-raised horses, and his wagon was loaded with seven hundred pounds of fertilizer, and he was driving ahead of the Dykes' wagon, which was following loaded with oats. After they had started from town Bruce Edwards and Harvey Dykes each secured a single barrel shotgun and rode on the front wagon with the appellant Rich, who was driving, the rear wagon being heavily loaded.

When they had gone about one mile on the public road they discovered an automobile ahead coming towards them in the public road. They pulled to the right side of the road and stopped. When the automobile reached a point nearly opposite the wagon of the appellant, Rich, it stopped, a shot was fired from the Rich wagon, killing Milstead, who was sitting on the right-hand side of the automobile, Walley being on the left side of the car driving, and Mrs. Walley sitting in the rear seat. A pistol dropped from the right hand of the deceased onto the running board

of the car. Walley jumped from the car with his pistol, and ran after the parties on the wagons, but his pistol failed to work on account of its defective condition, due to its being used as a club in the previous fight at Richton.

Virginius Walley and his wife, who had unexpectedly decided to bring Milstead back to Richton, testified that the appellant, Sam Rich, fired the shot that killed Milstead. The appellant and all of the other witnesses present testified that the shot was not fired by the appellant, Sam Rich, but that Bruce Edwards and Harvey Dykes fired the shot that killed Milstead. Other testimony in the case showed that parties along the public road immediately previous to the killing had seen Bruce Edwards and Harvey Dykes on the front wagon, each armed with a shotgun, and that the appellant, Sam Rich, was unarmed and was driving the team, and was still driving his frightened team after the shots.

There was considerable testimony introduced by the state over the objection of the appellant, giving the details of the previous fights that took place in Richton. The state was also permitted, over the objection of the appellant, to show what was said in conversations between the Dykes brothers and other parties at Richton with reference to threats that the Dykes brothers had made against Walley and the deceased, Milstead. These conversations by the Dykes brothers were out of the presence of the appellant, Rich, and with which he had no connection or knowledge. There is some testimony showing that Harvey Dykes told Sam Rich about getting the shotgun he carried on the wagon, and it is also shown that the appellant drove the wagon with the two men on it armed with shotguns; also that Rich was present and participated in the difficulties in Richton.

Amongst the instructions asked by the state the following instruction on conspiracy was granted, to-wit:

"The court instructs the jury for the state that, if you believe from the evidence in this case beyond all reasonable doubt that the defendant, Sam Rich, and others confed-

erated and agreed together to intercept Milstead and Walley and to shoot and kill them, or one of them; and if you believe beyond all reasonable doubt in pursuit of such conspiracy, if any, they, or either of them, armed themselves; and if you further believe beyond all reasonable doubt that they did intercept Milstead and Walley, and at a time when they were in no danger, either real or apparent, of losing their lives, or suffering great bodily harm at the hands of Milstead or Walley, one of them deliberately, wilfully, feloniously, and of his malice aforethought shot and killed Milstead; and at the time, if you further believe beyond a reasonable doubt that Sam Rich was present for the purpose of aiding, if necessary, in the killing—then in such case under the law he would be guilty of murder, even though he did not fire the shot that killed Milstead."

Complaint is made by the appellant that the court erred in permitting the state to show the details of the general fights that took place in Richton, and also in allowing the state to introduce in evidence the conversations between Dykes and others at Richton not in the presence of the appellant, and that it was fatal error of the court to grant the instruction on conspiracy because the testimony in the case is insufficient to support it.

As to the first two points presented we deem it sufficient to say that the court was in error in admitting the proof of the details of the difficulties between the parties at Richton, and the conversations out of the presence of Rich in which the Dykes brother made threats, before conspiracy was established. The rule governing the admissibility of evidence regarding such matters is well settled, and needs no discussion here. However, we consider it unnecessary to say whether or not these errors are reversible, because there must be a reversal upon the other point, and the former questions may not arise again on a second trial. 6 Am. & Eng. 866; *Thompson* v. *State,* 84 Miss., 758, 36 So. 389; *Brown* v. *State,* 88 Miss. 166, 40 So. 737.

We are convinced it was fatal error to grant the conspiracy instruction to the state, for the reason that the testimony in the record is insufficient to support it, and we think the rights of the appellant were substantially prejudiced by the instruction.

It will be observed that the jury is told that, even though appellalnt did not fire the shot that killed Milstead, yet they should convict if they believe that Sam Rich and others confederated and agreed together to intercept and kill Milstead and Walley. It is clear to us that if the testimony of Walley and his wife is eliminated, as the instruction authorizes, then we have no substantial proof in the record that the appellant conspired or aided and abetted in the killing. On the other hand, the testimony of all of the several other eyewitnesses shows that Sam Rich took no part in the killing, either by agreement or otherwise; it appearing that the other parties confessed the killing and pleaded guilty.

The appellant, Sam Rich, went to Richton, and was returning home that day on a perfectly lawful mission, and while he took part in one of the fights there, and was present at the others, yet he was unarmed, and at no time made any demonstration to kill either Walley or Milstead, which he could have done when he had Walley's pistol, but instead of doing so he unloaded the pistol and turned it over to the law officer. It is true that he drove his team back home with his wagon loaded with fertilizer, and transported on the wagon the two armed men, Bruce Edwards and Harvey Dykes, but this fact does not establish, and there is nothing in the record to show, that the parties had agreed to kill Walley or Milstead, or that they even expected or knew that Walley and Milstead were coming back to Richton on that road. The record shows that when Walley left Richton to go to his home in a bruised condition it was presumed by all that he would stay at home and not return that afternoon. But contrary to reasonable expectations Walley and his wife got in the car to bring Milstead, the marshal, back to Richton, and

thus it was that the parties met unexpectedly upon the public road and the deplorable tragedy took place. Rich had had no previous difficulty with Milstead. As to whether or not Edwards and Dykes were justified in shooting Milstead, who it appears had drawn his revolver in the car, is not here material for the reason that the appellant, Rich, claims that he did not shoot at all, and at all event this was for the jury.

Therefore we think if the testimony of Walley and his wife, which showed that appellant, Rich, fired the shot that killed Milstead, is disregarded, as authorized by the conspiracy instruction, a verdict of guilty on the theory of conspiracy could not be allowed to stand against Rich because the proof is not sufficient to support it. *Harper v. State,* 83 Miss. 402, 35 So. 572.

The judgment of the lower court is reversed, and the case remanded.

*Reversed and remanded.*