199 So.2d 251 (1967)
Cloudies SHINALL
v.
STATE of Mississippi.
No. 44352.
Supreme Court of Mississippi.
May 15, 1967.
Suggestion of Error Overruled June 12, 1967.
*254 Jack H. Young, R. Jess Brown, Jackson, Raymond A. Brown, Jersey City, N.J., Robert L. Carter, Barbara A. Morris, New York City, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Justice.
This is the second time this case has been appealed to this Court. On the former appeal (Shinall v. State, Miss., 187 So.2d 840  1966), we reversed and remanded the case because of an apparent racial discrimination in the selection of the grand and petit juries. When the mandate of this Court reached the Circuit Court of Forrest County, Mississippi, the appellant was reindicted by another grand jury. He was again tried and convicted of murder, and sentenced to suffer death. Appellant has again appealed to this Court and contends that the trial court committed prejudicial error and that a new trial should be granted to him.
The defendant, Cloudies Shinall, appellant here, shot and killed Fredrick L. Humphrey, a Constable of Justice of the Peace District No. 3 of Forrest County, Mississippi. The constable was not in his district at the time of the shooting. The defendant is a Negro, and the constable was Caucasian.
The record reveals that on the day of the homicide, the defendant borrowed an automobile from a friend, L.C. Leggett, for the purpose of going to get his pay check. He took two friends with him, and when they returned to the defendant's neighborhood, Palmer's Crossing, they visited several taverns where they consumed a large quantity of beer. During the afternoon, someone in the automobile with the defendant discovered a twenty-two caliber pistol, holster and belt under the front seat of the automobile. The defendant took the pistol and buckled it upon his person. He exhibited the pistol in one of the beer taverns, and when officers came by the tavern, he gave the pistol, holster and belt to the proprietress. When the officers left, she returned them to the defendant. The defendant and his companions continued to move from one beer tavern to another, until a short time after dark. They got into Leggett's automobile again in front of the "Heat Wave", and started to drive away, but the motor ceased to function at a place where there was a ditch in the road. Thus, the defendant was in the process of navigating the rough place in the road. The constable pointed the light beam of his flashlight toward the automobile; whereupon, the defendant drove away at such a rapid rate of speed his companions became alarmed. They beseeched defendant to slow his speed or stop because they were afraid he would wreck the car and cause their deaths.
In the meantime, Constable Humphrey had gotten into an automobile belonging to another constable and had begun to follow the automobile driven by the defendant. The defendant drove at a rapid rate of speed across a blacktop road and made several turns until he came into a curve in the *255 road in front of the Welborn home. The defendant was going at such a fast rate of speed he could not traverse the curve and the automobile went out of control into the driveway of the Welborn home, where it struck a wire fence. The constable came up behind the automobile, stopped his car, got out, left the lights burning, and approached the automobile driven by defendant. Two witnesses said the officer had a flashlight in his hand. One witness said he also had a pistol in his hand. The constable directed the passengers to get out of the automobile, and when they alighted, the officer looked into the front seat where defendant was. At this time a gun fired. One witness saw the flash of the gun, and another witness testified that the defendant shot the officer. The two passengers ran away, and when they had gone some distance, they heard two more pistol shots.
Later that night, the defendant told one of his companions that after they fled, he walked up to Humphrey and shot the "son-of-a-bitch in the head." He later told L.C. Leggett, owner of the automobile, that he had killed "the son-of-a-bitch", naming Humphrey, with Leggett's pistol. The pistol was later recovered from Leggett. It was mailed to the Federal Bureau of Investigation, together with a bullet found in the body of deceased by the coroner, and upon examination by them it was discovered that the bullet from the body of the deceased matched the other bullets fired from the pistol of L.C. Leggett, so that an expert witness was able to testify that the bullet found in the body of the constable was fired from the pistol belonging to L.C. Leggett.

I
After the second indictment was presented by the grand jury, the defendant moved to quash the indictment upon the ground that there was a systematic discriminatory selection of the members of the grand jury. The attorneys for the State and defendant entered a stipulation and offered testimony on this subject. It appears that since the former trial of this case, the Clerk of Forrest County has performed his duty as ordered by the Federal Court in that he has registered all colored persons who desired to vote. The record reveals that the Board of Supervisors has selected names for jury service without regard to race since the former trial of this case. The testimony reveals that since November 1965 nine Negroes have served on three grand juries in Forrest County; that Negroes have served upon petit juries in criminal cases; that a special venire of seventy-nine names summoned on the trial in the instant case contained fourteen Negroes. The trial judge overruled the motion to quash the indictment, and later overruled a motion to quash the petit jury. He took judicial notice that Negroes were not discriminated against in the selection of jurors.
On appeal to this Court, appellant complains that: (1) women were not required to serve on juries in Mississippi; (2) Negroes were systematically excluded from jury selection because, (a) they were being selected as they had been for many years, (b) that the Members of the Board of Supervisors did not select persons of "good intelligence, sound judgment, and fair character" as required by Mississippi Code Annotated section 1766 (1956) since they had selected persons they did not know; and (c) the State of Mississippi peremptorily challenged qualified colored persons left on the jury after the voir dire.
We are of the opinion that these contentions are not well-taken for the following reasons: (1) Women are not required to perform jury duty in Mississippi nor does the Federal Constitution require women to serve on juries in state courts. Mississippi Code Ann. § 1762 (1956); State v. Hall, 187 So.2d 861 (Miss. 1966); Pendergraft v. State, 191 So.2d 830 (Miss. 1966). (2) The evidence in this case shows that the Supervisors of Forrest County are now selecting juries from the list of qualified voters of that county without regard to race or ethnic groups, and that the constitutional *256 impediment of discriminatory jury selection for which this case was previously reversed has been removed. All qualified persons desiring to vote are now being registered by the Circuit Clerk of Forrest County, and from this list juries are now being drawn. (a) The argument that the juries are still being selected as they have been for many years is not well-taken, because the list from which the juries are now selected is a new list of qualified voters, including Negro citizens who have registered to vote. (b) We are of the opinion that Mississippi Code Annotated section 1766 (1956) in which the Board of Supervisors is directed to select "qualified persons of good intelligence, sound judgment, and fair character" is not a jurisdictional requirement, and although it is the duty of the Members of the Boards of Supervisors to select good citizens for jury service (Black v. State, 187 So.2d 815  Miss. 1966), nevertheless, the jury laws of this State are directory and the selection of the jury list in an informal or irregular manner does not render it illegal. Miss. Code Ann. § 1798 (1952). The contention of appellant that the State of Mississippi, in the instant case, discriminated against Negroes by peremptorily challenging five Negroes, is not supported by the facts or by the law. The voir dire examination shows that most of the persons challenged by the State had been associated with the defendant. Moreover, the State is not required to accept jurors simply because they belong to the same ethnic group as the defendant. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469.

II
The appellant contends that the attempted arrest of the appellant by Constable Humphrey was illegal because he was not a duly elected constable in District 3 and that when he began pursuit of defendant, no crime had been committed by him for which arrest should have been made. It is argued that deceased had a bad reputation for being a turbulent and violent person who arrested persons without probable cause, and for that reason the appellant had a right to resist an unlawful arrest and defend himself to the extent of taking the life of the deceased Constable Humphrey.
There is a list of cases heretofore decided by this Court in which we have held that a person may resist an unlawful arrest by such force as may be necessary, short of taking human life.[1] We are of the opinion that this line of authority is not applicable in the instant case because, under the facts here presented, the constable was attempting to make a legal arrest. Peace Officers and citizens may at any time arrest persons who are committing crimes in their presence, or to prevent a breach of the peace. Miss. Code Ann. § 2469 (1956). Moreover, the statutory law of this State expressly enjoins all constables "to keep and preserve the peace within his county." Miss. Code Ann. § 3887 (1956).
The defendant contends on appeal that at the time the constable began following him, he had committed no crime for which he could be lawfully arrested. Appellant cites the case of Smith v. State, 240 Miss. 738, 128 So.2d 857 (1961) to support this contention. We are of the opinion that the Smith case is not authority here because the officer in that case had begun the pursuit of the defendant before the defendant had violated the traffic laws of the State. Whereas, in the instant case the constable did not begin pursuit of the defendant until after the defendant had driven away at such a fast rate of speed his companions became *257 alarmed for their safety. It is pointed out by Blashfield in his Cyclopedia of Automobile Law and Practice Volume 8 (Perm. Ed.) section 5372, page 117, (1950) that reckless driving was a breach of the peace under the common law. Moreover, reckless driving is a misdemeanor under the statutory law of Mississippi. Miss. Code Ann. § 8175 (1956). See Barnes v. State, 249 Miss. 482, 162 So.2d 865 (1964). We are of the opinion that the attempted arrest of the defendant, under the facts shown here, was not an illegal attempt to arrest him.

III
On the second trial, the defendant did not testify, but he sought to introduce certain witnesses to prove that the deceased constable had a bad reputation in the community for violence; that he had arrested some persons without probable cause and had pistol-whipped two of the proffered witnesses. The defendant also sought to show that Wilmer Kitchens, the regular Constable of Justice of the Peace District No. 3, worked with the deceased Humphrey and that as a team these two constables had a bad reputation for harassing colored citizens in and around beer taverns at Palmer's Crossing. The defendant offered to show that the deceased had drunk from a half-pint bottle of gin a short time before he was killed. The defendant also contends that he was not permitted to show that someone had threatened his life, and that bullets had been sent to defendant.
It will be observed that this testimony falls into seven distinct categories: (1) general reputation of deceased for violence; (2) reputation for unlawful arrests; (3) bad reputation of Constable Kitchens; (4) particular incidents of violence to others; (5) unlawful assault upon women by third persons; (6) uncommunicated threats; and (7) deceased had drunk gin a short time before his death.
A minute examination of the proffered testimony has convinced us that the trial judge was correct in excluding this evidence, and for that reason we discuss each category of evidence separately. (1 and 2) The testimony of certain witnesses as to the character of the deceased constable was properly excluded because this evidence was not admissible under the facts in this case. Ordinarily the character or reputation of the deceased person is not involved as part of the issue in a murder case, and proof relative thereto is generally inadmissible. It has often been pointed out that the violent, revengeful or blood-thirsty character of deceased cannot be shown as an excuse for a homicide because the unprovoked killing of a bad man is no less murder than the killing of the most peaceful and law-abiding person in the community. Spivey v. State, 58 Miss. 858 (1881); Chase v. State, 46 Miss. 683 (1872); Jolly v. State, 13 Smedes & M. 223 (Miss. 1849); Dowling v. State, 5 Smedes & M. 664 (Miss. 1846); 40 C.J.S. Homicide § 222 (1944).
There are exceptions to this general rule. The violent, dangerous and turbulent character of a deceased may be shown: (A) when, from the circumstances of the case, it is a part of the res gestae; (King v. State, 65 Miss. 576, 582, 5 So. 97  1888); (B) where the evidence of the homicide is wholly circumstantial (Chase v. State, supra); (C) where it is doubtful as to who the aggressor was at the time of the homicide (Jolly v. State, supra; Cotton v. State, 31 Miss. 504 (1856)); or (D) where the immediate circumstances of the killing render it doubtful as to whether or not the act was justifiable. Wesley v. State, 37 Miss. 327, 346 (1859); Chase v. State, supra.
Before testimony of bad character of a deceased is admissible under one of the exceptions to the general rule, the evidence must show that the issue of self-defense must at least be in doubt. Spivey v. State, supra; Moriarty v. State, 62 Miss. 654, 661 (1885); Smith v. State, 75 Miss. 542, 23 So. 260 (1898); Anderson v. State, 181 Miss. 300, 179 So. 560 (1938); Wesley v. State, supra. It is said in Wigmore on Evidence *258 Volume 2 (3d Ed.) section 246, pages 44, 49-52 (1940) that:
"Another and more specific form of limitation is the doctrine of `overt act', peculiarly developed in Louisiana and Florida. The notion here is that the deceased's reputation can have a `bona fide' bearing on the defendant's apprehension only where there occurs, at the time of the affray, some conduct of the deceased which might be otherwise colorless, but when interpreted by his known character becomes apparently an act of aggression. Thus there must be some `overt act', i.e. of possible aggression before the reputation-evidence can be received. This is a wise and fair limitation, provided it be not further refined by details which generate into quibbles,  a proviso not always observed.
"Two peculiar questions may arise under the overt-act form of the doctrine (1) Shall the question whether an overt act is sufficiently evidenced to lay the foundation for the reputation-evidence be left entirely in the hands of the trial Court? Unless our law is to become a mass of quibbles which no practitioner can master and every murderer will welcome, the answer must be in the affirmative. (2) May the defendant's mere unsworn assertion of an overt act (where permitted instead of his sworn testimony) be considered as in itself some evidence of an overt act? It certainly should be; but whether it is sufficient evidence for the trial court should never be considered on appeal."
The only evidence in the record indicative of an overt act toward the defendant by the constable was the testimony of Lewis Willie Smith. He testified that the constable came toward the automobile driven by the defendant, after it had gone out of control and into a ditch, with a flashlight and a gun in his hand. As against this testimony, Smith testified that the constable did not threaten the defendant, and James Anderson, the other passenger in defendant's automobile, testified that he did not see a gun in the hand of the constable, and that the constable did not threaten either of the parties at the time of the attempted arrest. The malice of the defendant was clearly shown by the statements he made after the homicide, that he had walked up to the constable after he fell and shot "the son-of-a-bitch" again in the head. Moreover, the defendant knew that the person asking him to disembark was an officer and that it was his duty to submit to the arrest. Pickett v. State, 139 Miss. 529, 104 So. 358 (1925); Mullis v. State, 196 Ga. 569, 27 S.E.2d 91 (1943). Defendant had no right to kill the officer merely because he was afraid of him, or was afraid he would arrest him "for nothing."
(3) The testimony that Constable Kitchens had a bad reputation for violence was not admissible as evidence in the murder case where Constable Humphrey was killed, since Kitchens was not present at the time of the homicide. 40 C.J.S. Homicide § 223, at p. 1143, § 274, at p. 1229 (1944).
(4 and 5) Testimony of antecedent specific acts of violence alleged to have been committed by deceased was not admissible to show bad character. Newsome v. State, 197 Miss. 797, 20 So.2d 708 (1945). Details of a previous difficulty between the deceased and a third person prior to the homicide is inadmissible to show bad character of the deceased. 40 C.J.S. Homicide § 210 at p. 1119 (1944); Rich v. State, 124 Miss. 272, 86 So. 770 (1921); McCoy v. State, 91 Miss. 257, 44 So. 814, 815 (1907); The Chamberlayne Trial Evidence § 621 at 591 (1936); Thompson v. State, 84 Miss. 758, 36 So. 389 (1904); Carter v. State, 167 Miss. 331, 145 So. 739 (1933).
(6) The proffered testimony rejected by the trial judge and complained of here is the testimony of L.C. Leggett. He was asked: "Now there had been a time, had there not, when one of the men whom you know was at Lucy Wilborn's place had sent some bullets by you to Cloudies Shinall, *259 is that right? * * * A. He gave me some bullets that was in the back of his car. Q. And what did he say? What was the message he sent? * * * Q. Did someone send bullets with you and say these were what he was going to get Clyde with * * *?" This testimony was clearly incompetent. There is nothing in the evidence to show a threat, and if such a threat had been shown with reference to bullets, it was not shown to have been made by the deceased Humphrey. Moreover, uncommunicated threats are inadmissible in evidence until after it has been shown that the deceased did some overt act at the time of the homicide which would cause the slayer to believe that his life was in imminent danger. 26 Am.Jur. Homicide §§ 363, 364 (1940); Newcomb v. State, 37 Miss. 383, 400 (1859); 40 C.J.S. Homicide § 126(3) at p. 1009, § 207 at p. 1113 (1944).
(7) The appellant complains that he was not permitted to show that the deceased had drunk intoxicating liquor a short time before the homicide for the purpose of showing the state of mind of the deceased at the time of the killing. There are times when it is proper to permit introduction of testimony to show the intoxicated condition of the deceased for the purpose of showing whether or not there was any present and pressing necessity for the defendant to take the life of the deceased to protect his own, or to prevent great bodily harm. Byrd v. State, 154 Miss. 742, 123 So. 867 (1929); Jones v. State, 227 Miss. 518, 86 So.2d 348 (1956). On the other hand, evidence of the intoxication of the deceased is irrelevant where the testimony shows that the defendant was the aggressor, or there is no testimony evincing the necessity for the accused to kill the deceased. 40 C.J.S. Homicide § 224 at p. 1144 (1944).
At the time defendant offered testimony to show that the deceased had imbibed intoxicating liquor, there was no evidence indicating a necessity on the part of defendant to kill the constable, and testimony that the officer had been drinking was inadmissible.

IV
The appellant argues that the totality of the proceedings in the case violates defendant's right to due process of law under the Fourteenth Amendment to the Constitution of the United States. On the contrary, there is very little excuse given by the defendant for killing the constable under the facts in this case. The testimony is abundant that the defendant not only shot the constable at a time when the officer was trying to arrest him, but that after the constable had fallen and was helpless, he exhibited his malice by going up to the prone body of the officer and shooting him in the back of the head. We are of the opinion that the testimony is more than sufficient to show that the defendant was guilty of murder.

V
The appellant complains that he was not given instruction Number Five, which provides that if the jury believed, among other things, that the deceased officer pointed a pistol at the defendant, and he was in fear that bodily harm would be inflicted upon him, or that he would be killed, then it was the duty of the jury to find the defendant "not guilty." This instruction was properly refused because one does not have the right to kill another merely because he is afraid of him; nor may one kill another because he is afraid that he will receive some bodily harm. The law does not justify one's taking the life of a person in defense of his own person except where there are reasonable grounds to apprehend a design to commit a felony or do some great personal injury to the accused, and there shall be imminent danger of such design being accomplished. Miss. Code Ann. § 2218 (1956). Moreover, there was no testimony in the instant case that the officer pointed his gun at the accused.
*260 Defendant's instructions Numbered 10, 11, 13, 14 and 17 refused by the court are subject to the same criticism as is made of instruction Number Five. Moreover, instructions as to the general reputation of the deceased were properly refused.
Instruction Number Twenty advises the jury that a constable has no jurisdiction to arrest a person beyond the confines of the district for which he was elected. This was error. As above pointed out, it is the duty of a constable to make arrest anywhere in the county for crimes committed in his presence (Miss. Code Ann. § 2467  1956), or to preserve the peace (Miss. Code Ann. § 3887  1956), and he may be fined for failure to perform his duties (Miss. Code Ann. § 3892  1956). The instruction was properly refused.
The manslaughter instruction, Number Twenty-four, refused by the court, is repetitious of instruction Number Twelve granted to the defendant; moreover, the phrase "then you must find for the defendant" is confusing.
The defendant complains that instruction Number Six for the State is erroneous and is reversible error. It is as follows:
"The Court instructs the jury for the State that in order to justify a homicide on the plea of self defense there must be something shown in the conduct of the deceased indicating a present intention to kill or do some great personal injury to the slayer, and imminent danger of such intention being accomplished; mere fears or beliefs are insufficient. The danger must be such as to lead a person reasonably to believe that the killing was necessary to prevent the deceased from killing him or doing to him some great bodily harm."
This instruction is based upon Mississippi Code Annotated section 2218 (1956).
Our trial courts have been granting, and this Court has been sustaining, this instruction, or one of similar verbiage since the early days of our State's jurisprudence. In Coleman v. State, 22 So.2d 410 (Miss. 1945), this Court said that a similar instruction had been approved since Wesley v. State, 37 Miss. 327 (1859). See: Dobbs v. State, 200 Miss. 595, 27 So.2d 551, 29 So.2d 84 (1947); Bailey v. State, 174 Miss. 453, 165 So. 122 (1936); Johnson v. State, 140 Miss. 889, 105 So. 742 (1925); Harris v. State, 47 Miss. 318 (1872); Bailey v. State, 174 Miss. 453, 165 So. 122 (1936); Head v. State, 44 Miss. 731 (1871); Ransom v. State, 149 Miss. 262, 115 So. 208 (1928); Kendrick v. State, 55 Miss. 436 (1877). This identical instruction is held to be good in the case of Holmes v. State, 199 Miss. 137, 24 So.2d 90 (1945).
The defendant obtained fifteen instructions, and the State obtained seven. The instructions for the defendant were liberal and we find no reversible error in the granting, or refusing, instructions in this case.
The appellant complains that the trial court committed reversible error in permitting the pathologist, Dr. Cook, to testify that the powder burns on the flesh of the deceased indicated that the gun was a short distance from his body when fired. We are of the opinion, however, that the testimony was properly admitted. King v. State, 251 Miss. 161, 168 So.2d 637 (1964).

VII
The evidence with reference to the head wounds of the deceased was properly admitted, and corroborated the testimony of witnesses that, after the officer fell, accused shot him in the back of the head, and this goes directly to the issue of malice as an element in the charge of murder.
There are other alleged errors assigned, and although they were not argued, nevertheless, we have carefully examined these assignments of error, and we do not find error for which this case should be reversed.
*261 We therefore affirm the judgment of the trial court and set June 30, 1967, as the day for the execution of the appellant Cloudies Shinall in the gas chamber, as required by law.
Affirmed.
All Justices concur.
NOTES
[1] Bergman v. State, 160 Miss. 65, 133 So. 208 (1931); Shedd v. State, 203 Miss. 544, 33 So.2d 816 (1948); Williams v. State, 120 Miss. 604, 82 So. 318, 84 So. 8 (1919); Williams v. State, 127 Miss. 851, 90 So. 705 (1922); Fletcher v. State, 129 Miss. 207, 91 So. 338 (1922); Walker v. State, 188 Miss. 177, 189 So. 804 (1939); Cutrer v. State, 207 Miss. 806, 43 So.2d 385 (Miss. 1949); Coleman v. State, 218 Miss. 246, 67 So.2d 304 (1953).