CHANDLER, Justice,
Dissenting:
¶ 22. Because I believe today’s decision erodes the exclusionary rule in Mississippi by holding that a police chiefs ignorance of his municipality’s boundaries was an innocent mistake, I respectfully dissent. Chief Langston’s pursuit of Delker was plainly violative of the Fourth Amendment because, outside his jurisdiction, Chief Langston lacked any legal authority whatsoever to initiate pursuit of Delker for the misdemeanor offense of traveling ten miles per hour over the speed limit. Miss.Code Ann. § 99-3-7(a) (Rev.2007). In my view, *307 knowledge of jurisdictional boundaries is a fundamental duty of law enforcement, and Chief Langston’s total ignorance of the municipal boundary was at least gross negligence, if not reckless disregard for the constitutional rights of Delker and other motorists traveling on Old Country Club Road. I believe that applying the exclusionary rule in this case obviously would encourage law enforcement to be cognizant of jurisdictional boundaries by excluding evidence obtained from illegal, extrajuris-dictional arrests. Therefore, I would reverse the trial court’s denial of Delker’s motion to suppress.
¶ 23. I begin with a brief discussion of Herring v. United States, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), in which the United States Supreme Court applied the good-faith exception to the exclusionary rule in the context of negligent record-keeping by the police. In Herring, officers stopped Herring and arrested him based on a warrant issued in a neighboring county. Id. at 698. A search incident to the arrest yielded drugs and a gun. Id. However, it turned out that, unknown to the arresting officers, the warrant had been recalled, and the issuing department negligently had failed to update the database. Id. The Supreme Court found that the good-faith exception to the exclusionary rule applied, because “when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not ‘pay its way.’ ” Id. at 704. The court described the conduct at issue as “isolated negligence attenuated from the arrest.” Id. at 698. The court held that:
To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in orn-eases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.
Id. at 702 (emphasis added). Thus, for example, “[i]f the police have been shown to be reckless in maintaining a warrant system, or to have knowingly made false entries to lay the groundwork for future false arrests, exclusion would certainly be justified under our cases should such misconduct cause a Fourth Amendment violation.” Id. at 703.
¶ 24. The court stated that it had “never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence.” Id. at 700. Rather, the exclusion question “turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct.” Id. at 698. The court explained that, because the purpose of the rule is to deter police misconduct, an assessment of the flagrancy of police misconduct is necessary in each case. Id. at 701. “[Ejvidence should be suppressed ‘only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.’ ” Id. (quoting Illinois v. Krull, 480 U.S. 340, 352-353, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987)). Finally, the analysis of deterrence and culpability is an objective inquiry of “whether a reasonably well trained officer would have known that the search was illegal” in light of “all of the circumstances,” which will frequently include the officer’s knowledge and experience. Id. at 703 (quoting United States v. Leon, 468 U.S. 897, 922 n. 23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).
¶ 25. In my opinion, the police misconduct at issue easily meets the standard for *308 exclusion announced in Herring. Knowledge of jurisdictional boundaries is one of the fundamental duties of a chief of police. See Miss.Code Ann. 21-21-1 (Rev.2007) (“the ... chief of police shall be an ex officio constable within the boundaries of the municipality” and “shall be the chief law enforcement officer of the municipality and shall have control and supervision of all police officers employed by said municipality”). Chief Langston testified that he had been unaware that Old Country Club Road was outside his jurisdiction until shortly before the hearing on the motion to suppress, when a county road crew correctly informed him that the road was outside his jurisdiction. Chief Langston provided no explanation for why he had been unaware of the municipal boundaries of Marion. Rather, it seems that Chief Langston merely assumed that Old Country Club Road was within his jurisdiction. Indeed, as the majority points out, Chief Langston was “mistaken.” But the presence or absence of a mistake by the police is not the standard for application of the exclusionary rule. A “mistake” is not a legally recognized mental state, nor was a “mistake” a legal standard announced in Herring. Rather, Herring referred to the familiar classifications of conduct as negligent, grossly negligent, reckless, or intentional. Herring, 129 S.Ct. at 702.
¶ 26. I assert that a reasonably well-trained chief of police would have ascertained the jurisdictional boundaries of his town, and that Chief Langston’s ignorance of the municipal boundaries under the facts of this case was at least gross negligence. This Court has defined “ ‘gross negligence’ [a]s that course of conduct which, under the particular circumstances, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them.” Dame v. Estes, 233 Miss. 315, 318 101 So.2d 644, 645 (1958). In my opinion, it is beyond peradventure that a police chiefs ignorance of the fact that a highway lies outside his jurisdiction is at least gross negligence. As the police chief, Chief Langston was responsible not only for acquiring accurate knowledge of jurisdictional boundaries, but also for conveying that knowledge to subordinate officers. Miss.Code Ann. § 21-21-1 (Rev.2007). His ignorance of the boundary disclosed a reckless indifference to the consequences of that lack of knowledge; that is, a reckless indifference to the consequences of attempting to exercise authority outside his jurisdiction, including the violation of individuals’ civil rights. And Chief Langston exerted no substantial effort to avoid these consequences by simply learning the true municipal boundaries. So considered, Chief Langston’s error evinced reckless disregard for the constitutional rights of travelers on Old Country Club Road. This flagrant level of police culpability mandates exclusion. Herring, 129 S.Ct. at 701.
¶ 27. The flagrancy of Chief Langston’s misconduct becomes even more obvious when contrasted with the negligent conduct that was at issue in Herring. In Herring, the police made a record-keeping error when, for whatever reason, a computer database was not updated. Id. at 698. This was a negligent failure to act attenuated from the arrest. Id. at 698. Here, Chief Langston’s error was not attenuated from his illegal pursuit of Delker, because he was actively patrolling outside his jurisdiction at the time he initiated pursuit.
¶ 28. I would find that excluding the evidence procured from Chief Langston’s illegal pursuit of Delker would have a meaningful deterrent effect by encouraging the basic competence of our law enforcement officers. The majority opines that, because this Court has not decided many cases involving errors in jurisdiction *309 al boundaries, “any purported deterrent effect” is “dubious at best.” Maj. Op. at ¶ 17. First, I observe that this Court has decided cases involving extrajurisdictional arrests, and the majority provides no guidance as to how many more appellate decisions would suffice for it to place a value on deterrence. See Nash v. State, 207 So.2d 104, 106-07 (Miss.1968); Shinall v. State, 199 So.2d 251, 256-57 (Miss.1967) (overruled on other grounds). Second, I observe that the issue of how many cases have managed to work their way through each level of our justice system to finally arrive at this Court to present the issue of an extrajurisdictional arrest is hardly relevant to whether exclusion would deter the police from acting outside their jurisdictions.
¶29. The main purpose of the exclusionary rule “is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it.” Elkins v. U.S., 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960). I believe that Chief Langston’s error was “sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.” Herring, 129 S.Ct. at 702. In my opinion, it would be elementary in most instances for the police to acquire knowledge of jurisdictional boundaries, and requiring police to know the boundaries or face exclusion of evidence would have a meaningful deterrent effect.
¶ 30. Regarding the price paid by the justice system, I fully agree with the majority’s condemnation of drunk drivers such as Delker. But, while keeping “a guilty and possibly dangerous defendant” imprisoned and away from the public is always a commendable endeavor, my primary concern, as it must be, is for the proper application of the law. By discounting the significance of Chief Lang-ston’s error, the majority encourages the State’s law enforcement officers’ ignorance of jurisdictional boundaries when initiating pursuit of misdemeanants — persons the officer observes to be merely traveling a few miles over the speed limit or committing other minor traffic violations. Most vitally, by casting Chief Langston’s gross negligence as simple negligence, today’s decision may greatly expand the practice of judicial forgiveness of police misconduct that violates individuals’ Fourth Amendment rights. I believe it is the proper role of this Court to deter such police misconduct by excluding its fruits and safeguarding individuals’ freedom from unreasonable searches and seizures.
¶ 31. In conclusion, I would reverse the trial court’s denial of the motion to suppress.
WALLER, C.J., AND KITCHENS, J„ JOIN THIS OPINION.