PIERCE, Justice,
Dissenting:
¶ 28. Because the trial court’s findings were supported by substantial credible evidence, it did not err in denying Eaddy’s motion to suppress. Accordingly, I would affirm Eaddy’s conviction and sentence. Therefore, I respectfully dissent.
¶ 29. In deciding whether the trial court erred in denying Eaddy’s motion to suppress, the Court “must determine whether the trial court’s findings, considering the totality of the circumstances, are supported by substantial credible evidence.”[5] The majority highlights inconsistencies between the evidence presented at the motion-to-suppress hearing and that which was presented at trial. But we should not look at the evidence presented at trial in deciding whether the trial court erred at the motion-to-suppress hearing, unless contrary evidence is presented at trial and the defendant moves to suppress in light of such evidence not previously considered by the court, and asks the court to reconsider the “totality of the circumstances.”

The investigatory stop

¶ 30. At the hearing, the trial court was presented with the sworn testimony of Jefferson, the arresting officer, coupled with his report. Jefferson testified that, on the day of the arrest Edwards had received a personal phone call that Barnes was in town and “driving a red Cadillac with Texas plates that had warrants on it.” Jefferson further recounted that both he and Edwards had personal knowledge of Barnes’s outstanding warrants, and that *1217 “we check warrants every day.” He noted that he did not know Barnes, but that Edwards did. On cross-examination, Jefferson stated that someone had called Edwards with the tip because “[t]hey knew we had warrants on him.” Jefferson testified that he and Edwards had spotted a red Cadillac with a Texas license plate, and had pulled it over.
¶ 31. The defense did not call any witnesses at the hearing, nor did Eaddy testify. It did, however, argue that the stop was unlawful, and that Jefferson’s testimony was at odds with his report. Jefferson’s testimony was otherwise uncontested. The trial court found, based on the evidence presented at the hearing, that Jefferson’s actions were justified.
¶ 32. A reasonable cause for an investigatory stop may be based on an officer’s personal observation or on an informant’s tip, if it bears indicia of reliability.[6] “Indi-cia” is defined as “circumstances which point to the existence of a given fact as probable, but not certain.”[7] The fact that the caller knew that Barnes had outstanding warrants, and that the police were looking for him, demonstrates that the caller had a special familiarity with Barnes’s affairs. Further, the caller described the vehicle Barnes would be driving as a “red Cadillac [sic] with Texas plates.” The color and make of the vehicle, coupled with the fact that the car had a “Texas plate” in the small town of Port Gibson, Mississippi, arguably set it apart from most, if not all, vehicles in that area. The officers’ independent knowledge of Barnes’s arrest warrants, together with the tip, exhibited sufficient indicia of reliability to justify an investigatory stop.
¶ 33. The tips provided in McClellan v. State[8] and Burchfield, v. State[9] were similar to the one provided here, with regard to the descriptions of the vehicles. In Burchfield, the police were informed by a store clerk that two white males in a Cadillac with Arkansas plates had each purchased a quantity of pills containing pseu-doephedrine and were leaving the parking lot, westbound on Goodman Road from Highway 51.[10] In McClellan, the police received information that a man and woman had left a store in an older-model blue automobile, and that the vehicle was last seen traveling east on the Highway 82 bypass.[11] Here, the caller informed Edwards that Wendell Barnes was in town and “driving a red Cadillac with Texas plates that had warrants on it.” Edwards relayed this information to Jefferson. Notably, both officers had personal knowledge concerning Barnes’s warrants, and Edwards knew Barnes personally. The officers in McClellan and Burchfield did not have any personal knowledge of the alleged criminal activity, and thus took an additional step to corroborate the information provided by the caller before pulling over the vehicle. Indeed, the standard for reasonable suspicion requires as much when the officer lacks any personal knowledge about the alleged criminal activity.[12] But where, as here, an officer has personal knowledge that an individual is wanted in connection with a felony and has been *1218 successfully evading arrest, coupled with a tip saying as much and providing a detailed description of the car the individual is driving, the standard for reasonable suspicion has been met.[13] Thus, under the totality of the circumstances,[14] the officers had as much information as the officers in McClellan and Burchfield, and therefore had reasonable suspicion to make an investigatory stop.

The protective frisk

¶ 34. At the hearing, Jefferson testified that once he had stopped the vehicle, he asked the driver, whom he did not know, to step out. When the driver stepped out, Jefferson observed the “butt of a gun sitting out from under the driver side seat,” and an empty whisky bottle. Jefferson also “could tell he had been drinking.” At that point, Jefferson brought Eaddy to the rear of the car and patted him down for “safety reasons.” During the frisk, Jefferson found two pill bottles in Eaddy’s pockets that contained what appeared to be crack cocaine.
¶ 35. On cross-examination, Jefferson was asked about the discrepancies in his police report. He testified that he had misstated that he knew Barnes and the exact point in time at which he had seen the gun. In an effort to clarify his report, Jefferson stated that he did not know Barnes at the time of the stop, and that he had seen the “butt of a gun” under the driver’s seat immediately after Eaddy had stepped out of the vehicle. The trial court found that “the officer’s report at the time of the stop and arrest ... is not intended to be the total courtroom testimony of that officer.”
¶ 36. Legally, an officer may frisk a person for weapons, if the officer has reason to believe that he is dealing with an armed and dangerous individual.[15] This type of noncustodial stop is an exception to the Fourth Amendment’s general proscription against warrantless searches, otherwise known as a Terry stop.[16] Once Jefferson observed the “butt of a gun” under the driver’s seat, saw the empty whiskey bottle, and smelled alcohol on Eaddy, he had reason to perform a limited search for weapons. Thus, Jefferson’s actions hardly can be deemed unreasonable.[17]

The exclusionary rule and the good-faith exception

¶ 37. Even assuming, arguendo, that the stop violated Eaddy’s Fourth Amendment rights, the facts of this case would not trigger the exclusionary rule. There is no individual right to have improperly obtained evidence excluded, and the fact that a violation occurs does not render the exclusionary rule applicable, per se.[18] Rather, the exclusionary rule applies only when the benefits of deterrence outweigh the *1219 social costs.[19] And the rule need not apply in every case, such as the one here, where its application might provide only marginal deterrence.[20]
¶ 38. Moreover, to trigger the rule, the officers’ conduct must be “sufficiently deliberate that the exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.”[21] Otherwise, “objectively reasonable” conduct falls within the good-faith exception to the exclusionary rule, adopted by this Court in White v. State.[22]
¶ 39. At the hearing, Jefferson testified that he did not know what Barnes looked like, and justified his asking the driver of the vehicle to step out of the car based on the dark-tinted windows. Jefferson testified that, after the driver had stepped out of the car, he noticed the “butt of gun” under the driver’s seat, saw an empty liquor bottle and smelled alcohol on Eaddy. These observations prompted Jefferson to frisk the driver for dangerous weapons, prior to investigating the driver’s identity. Nowhere in our caselaw are officers required to confirm a person’s identity before frisking them, once an officer has seen what appears to be a weapon and believes that individual to be armed and dangerous.[23] Thus, any notion that Jefferson acted unreasonably and exceeded the scope required to resolve the driver’s identity, given the facts, is shocking, and turns a blind eye to an officer’s dilemma when enforcing our laws to take reasonable steps for his or her own safety. Because Eaddy failed to present any evidence sufficient to trigger the rule that the officers’ conduct was deliberate, reckless, or grossly negligent, and because the officers reasonably relied on the information they received from the caller, as well as their own personal knowledge, and believed in good faith that Barnes would be driving the car, I would extend the White/Lem good-faith exception to include cases such as this one.
CONCLUSION
¶ 40. In sum, Eaddy presented no evidence contesting Jefferson’s testimony at the hearing, leaving the trial court with Jefferson’s testimony and report upon which to base its decision. I cannot agree with the conclusion that the trial court erred in denying Eaddy’s motion to suppress. Accordingly, I would affirm Ead-dy’s conviction and sentence.
CARLSON, P.J., RANDOLPH AND LAMAR, JJ„ JOIN THIS OPINION.

. Delker v. State, 50 So.3d 300, 303 (Miss.2010) (citing Moore v. State, 933 So.2d 910, 914 (Miss.2006)).

. Burchfield v. State, 892 So.2d 191, 194-195 (Miss.2004) (citing Floyd v. City of Crystal Springs, 749 So.2d 110, 118 (Miss.1999)).

. Black's Law Dictionary 912 (Rev. 4th ed. 1968).

. McClellan v. State, 34 So.3d 548, 552 (Miss.2010).

. Burchfield, 892 So.2d at 194-95.

. Id. at 195.

. McClellan, 34 So.3d at 550.

. Burchfield, 892 So.2d at 194-195 (citing Floyd, 749 So.2d at 110).

. See Gonzales, 963 So.2d at 1142 (citing Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) ("[s]pecific and artic-ulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.").

. See Wilson v. State, 935 So.2d 945, 950 (Miss.2006).

. Terry, 392 U.S. at 27, 88 S.Ct. 1868.

. Gonzales v. State, 963 So.2d 1138, 1141 (Miss.2007); Terry, 392 U.S. at 27, 88 S.Ct. 1868.

. See Gonzales, 963 So.2d at 1141-42; Terry, 392 U.S. at 27, 88 S.Ct. 1868 (citations omitted) (where the Supreme Court noted “that it is imperative that the facts be judged against an objective standard: ‘Would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?'").

. See Herring v. U.S., 555 U.S. 135, 129 S.Ct. 695, 700, 172 L.Ed.2d 496 (2009).

. Id.

. Id.

. Id. at 702.

. White v. State, 842 So.2d 565, 570-571 (Miss.2003) (invalidating telephonic search warrants but finding that the exclusionary rule should not apply to evidence seized pursuant to such warrants because the officers thought the procedure was valid). Notably, this Court has applied the White/Leon good-faith exception only to circumstances involving the validity of a warrant.

.See Terry, 392 U.S. 1, 27, 88 S.Ct. 1868.