RANDOLPH, Justice,
concurring in part and dissenting in part:
¶ 30. I concur with the adoption of the “community caretaking” doctrine, but dissent to the plurality’s result, which does not apply it. The plurality presents an excellent synopsis of the “community care-taking” doctrine and has crafted a clear, workable standard for its application. Assessing the exercise of a “community care-taking” function on a case-by-case basis, by objective reasonableness under “the totality of the circumstances,” is a sound approach according balance to the interests of public safety and individual Fourth Amendment protections. (Plur. Op. at ¶ 14).
¶ 31. Despite the plurality’s balanced, common-sense approach, Justice Kitchens rejects the “adoption of the community caretaking function as it applies to traffic *694 stops by police[,]” predicated upon “imaginable activity a police officer subjectively thinks could possibly be dangerous.[36] (Kitchens Op. at ¶¶ 6, 11). Justice Kitchens’s opinion ignores the standard of objective reasonableness under the “totality of the circumstances” championed by the plurality and the United States Supreme Court. (Plur. Op. at ¶ 14) (citing Brigham City, Utah v. Stuart, 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (rejecting the officer’s subjective intent)). Can it fairly be argued that a police officer may not stop a delivery truck with an unsecured cargo door in the interest of public safety? A vehicle with an under-inflated tire? An RV with an unlatched hatch cover flapping in the breeze? Where is the constitutional violation or putative 42 United States Code Section 1983 claim in such cases? Although no imminent hazard may exist, if left unchecked, each could have dire consequences for the traveling public.[37] Whether one considers his scenarios or mine, all illustrate why a case-by-case examination of the applicability of “community caretaking” in a traffic-stop context is required. The appropriate inquiry by the trial court is whether the stop was objectively reasonable, given the totality of the circumstances surrounding the condition(s) observed by an officer, that the driver, occupants, or other members of the traveling public were endangered.
¶ 32. I part ways with the plurality only insofar as it concludes that the circuit court “erred” in finding that the subject traffic stop was “reasonable” because “the facts presented ... do not justify a reasonable belief that Trejo needed help or that the public was endangered.... ” (Plur. Op. at ¶¶ 1, 15-16) (emphasis added). The plurality’s ultimate finding is undergirded by a presupposition of de novo review, despite the fact that “[i]n reviewing the denial of a motion to suppress, we must determine whether the trial court’s findings, considering the totality of the circumstances, are supported by substantial credible evidence.” Delker v. State, 50 So.3d 300, 303 (Miss.2010) (quoting Moore v. State, 933 So.2d 910, 914 (Miss.2006)) (emphasis added). The circuit judge received credible evidence to support his finding that the subject traffic stop was initiated “for safety reasons[,]” a distinct and separate undertaking from a Fourth Amendment seizure based upon probable cause or reasonable suspicion of criminal activity. Specifically, Picou presented the circuit court with “objective, specific, and articulable facts” from “a trained and experienced police officer[,]” informed by his “inference and deduction[,]” in support of his perception that the driver may need aid, as opposed to the suspicion of criminal activity. State v. Marx, 289 Kan. 657, 662, 215 P.3d 601 (2009); State v. Bakewell, 273 Neb. 372, 730 N.W.2d 335, 339 (2007) (internal citations omitted). The circuit judge found that the traffic stop based thereon was objectively reasonable, in the interest of protecting both the driver and the safety of the general public.[38] See People v. Mc-Donough, 239 Ill.2d 260, 272, 346 Ill.Dec. 496, 940 N.E.2d 1100 (2010). See also *695 State v. Mitchell, 498 N.W.2d 691, 694 (Iowa 1993) (“[t]he State has a valid interest in the safety of its citizens on its roads and highways.”). As I would find that the circuit court did not err in concluding that Trejo was stopped “for safety reasons[,]” the “community caretaking” doctrine should apply to the subject traffic stop. Under “the totality of the circumstances,” the circuit court’s conclusion was “supported by substantial credible evidence.” Delker, 50 So.3d at 303 (quoting Moore, 933 So.2d at 914). Accordingly, I conclude that the circuit court did not err in denying Trejo’s “Motion to Suppress,” premised upon the “safety” stop.
¶ 33. Because I would reverse the decision of the Court of Appeals and reinstate and affirm the ruling of the circuit court denying Trejo’s “Motion to Suppress,” I respectfully concur in adoption of the “community caretaking” doctrine, but dissent as to the result reached by the plurality.
PIERCE, J., JOINS THIS OPINION.

. Compare this to Winston Churchill’s statement to Parliament that "[t]his is one of those cases in which the imagination is baffled by the facts."

. An imminent danger does not have to be of the moment, but rather ''[a]bout to occur at any moment: Impending.” Webster’s II New College Dictionary 553 (2001).

.Using exclusionary rule standards by way of analogy, how exactly did the "constable ... blunde[r]” here? Delker, 50 So.3d at 306 (quoting People v. Defore, 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926) (opinion of the Court by Cardozo, J.)).